## John Denkman et al., Appellees, v. James F. Newbanks et al. Sterling National Bank and S. G. Crawford, Appellants.

## Gen. No. 6,883.

1. CONTRACTS, § 190*—*construction of several instruments as one transaction.* Where several instruments are executed at the same time and relate to the same subject-matter, they are considered parts of one transaction.

2. MORTGAGES, § 15*—*when deed construed as mortgage.* To constitute an instrument, in form a deed, a mortgage, there must be (1) a debt owing by the owner of the real estate, (2) an intention of the parties that the conveyance is made as security for that debt, and (3) a provision, express or implied, for a defeasance.

3. MORTGAGES, § 21*—*when deed a mortgage.* Where grantor in a quitclaim deed owed a debt to a bank and the cashier was made grantee and also executed a contract reciting the debt and the deed and that the cashier should hold it in trust and, if the debt was not paid, should sell the land, pay the bank and pay the excess to the grantee, but if the debt was paid, he should reconvey, the transaction was a 'mortgage of the land.

4. MECHANICS' LIENS, § 190*—*sufficiency of description.* Discrepancies in the description of a lot in pleadings and evidence will not render such description insufficient where the lot was identified by the description aside from the discrepancies, and the deed in issue and the decree contained a like description which will be presumed to be the correct one.

5. APPEAL AND ERROR, § 438*—*questions not raised below.* Discrepancies in the description of a lot in the pleadings and the evidence cannot be raised on appeal where the question was not raised in the court below.

6. MECHANICS' LIENS, § 167*—*jurisdiction to determine whether deed was in fact a mortgage.* Under Mechanics' Liens Act, sec. 7 (J. & A. ¶ 7145), which requires such liens to be enforced within 4 months against other lienholders, but allows 2 years as against the owner, the court had jurisdiction to determine whether a deed by an owner was in fact a mortgage, since, if it was the latter, the lien was enforcealfe as to the interest of the owner, subject to the mortgage, though not brought within the 4 months.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 17, 1921.

A. A. WOLFERSPERGER, for appellants.

PHILIP H. WARD, for appellees John Denkman and James C. Simpson.

VAN SANT & BESSE, for appellee Frank A. Trager.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On March 17, 1919, appellees, partners as Simpson and Company, filed a bill in equity in the Whiteside circuit court against James F. Newbanks and wife, and the Sterling National Bank and S. G. Crawford, to enforce a mechanic's lien upon real estate in said county. Complainants set up a verbal contract made by them with Newbanks to furnish material for the erection of a building on certain real estate then owned by him in fee; that they did furnish material for said building, the final delivery whereof was on August 28, 1918, and that they delivered to Newbanks a true and detailed statement of what they furnished, but the same had not been paid for; that payment was to be made as the work progressed, and the balance within 30 days after final delivery; that they filed a claim for lien on February 28, 1919; that on July 26, 1918, Newbanks quitclaimed said premises to Crawford, but that said deed was given merely to secure the Sterling National Bank, of which Crawford was cashier, for an indebtedness of Newbanks to said bank, and that the agreement was that if Crawford sold the real estate, he should pay the debt of Newbanks to the bank and deliver the rest of the proceeds of the sale to Newbanks, and that if Newbanks paid the bank, he would be entitled to a deed from Crawford. The bill averred that by reason of delay in filing their

lien, the right of the bank to have its indebtedness paid out of the proceeds of the sale of the property is paramount to that of complainants, but that Crawford is merely a trustee for the bank and Newbanks, and that the interest of Newbanks in the property is subject to the lien of complainants, and that said deed to Crawford should he held to be a mortgage and claimants entitled to a lien subject to the claim of the bank. On May 20, 1919, Frank Trager was allowed to intervene and claim a lien on said property for the balance due him on a plumbing bill for labor and material on said building under a contract with Newbanks, for which he filed a claim for lien about December 4, 1918. He also answered the complainants' bill. Crawford and the bank answered, and they alleged that said deed to Crawford, the fact of which they admitted, was not a mortgage. Newbanks and wife were defaulted. The cause was referred to a master to report proofs and conclusions. He took the evidence and made a report establishing the liens but rejecting some items, finding the deed to Crawford security for the payment of Newbanks' debts to the bank, and that the priority of liens was (1) the bank, (2) Trager, (3) Simpson and Company. The lienors filed exceptions to the findings, but they are abandoned. The bank and Crawford filed exceptions. There was a decree which found the deed from Newbanks to Crawford an equitable mortgage in favor of the bank and entitled to priority, and subject thereto established liens in favor of complainants and Trager, equal in point of time. The decree directed a sale of the premises if the several liens were not paid. The bank and Crawford appeal.

The main question is whether the transaction between Newbanks and Crawford was an equitable mortgage, or was a conveyance by Newbanks to Crawford in fee, with a conditional contract to reconvey. Newbanks gave Crawford an unqualified quitclaim deed.

Crawford at the same time gave Newbanks a contract which stated certain debts from Newbanks to the bank in the principal sum of $4,990, evidenced by notes not then due, executed by Newbanks and payable to the bank, and that Newbanks had quitclaimed these premises to Crawford. It recited that Crawford holds title to said real estate as trustee for the bank "as security for the payment of said moneys above named and as evidenced by said notes above described"; that Crawford agrees that upon the payment of said moneys to the bank with interest on or before the maturity of said notes he will reconvey the property to Newbanks, but if Newbanks fails to pay the same when due, the quitclaim deed shall become an absolute conveyance and Crawford shall sell the real estate at the best price he can obtain and convey good title and apply the proceeds to pay the moneys due the bank and to pay Newbanks the excess over the moneys due the bank. Our statute provides that every deed conveying real estate which shall appear to have been intended only as security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered a mortgage. Hurd's Rev. St. ch. 95, sec. 12 (J. & A. ¶ 7587). This statute has often been applied and enforced, and the instruments may create a mortgage though they expressly forbid the intervention of equity. *Cassem v. Heustis*, 201 Ill. 208. It is familiar law that if several instruments are executed at the same time and relate to the same subject-matter, they are considered parts of one transaction. To constitute such transactions a mortgage there must be (1) a debt owing by the owner of the real estate; (2) an intention of the parties that the conveyance is made as security for that debt; and (3) a provision, expressed or implied, for a defeasance. Here there was a debt. Newbanks owed the bank upon several notes. The contract by Crawford with Newbanks expressly re-

cited and otherwise showed that it was the intention of the parties that this property should be security for these debts. Crawford was an officer of the bank. If the notes were not paid at maturity he was to sell the property and pay to Newbanks the balance of what he received. This brought the case in every respect within the many decisions of our Supreme Court holding such transactions a mortgage. True, the contract provided that if Newbanks did not pay the bank at the maturity of his notes, his quitclaim deed to Crawford should become an absolute conveyance, but the parties could not by that provision abrogate the statute. The further language of the contract showed that the parties intended the premises to be still security only for the payment of the debt. What the parties evidently sought to accomplish was to avoid the necessity of filing a bill in equity, and to permit such a foreclosure out of court as was permissible in this State before the Act of July 1, 1879, which forbade that any real estate should be sold by virtue of any such power of sale in a mortgage or trust deed, and required that all such sales should be pursuant to a judgment or decree of a court of competent jurisdiction. The court therefore properly held the transactions between Newbanks, Crawford and the bank to be a mortgage only, and the bank cannot complain that it was given priority. The case would be very different if the contract had provided that if Newbanks did not pay the notes at maturity, his notes should be canceled and surrendered to him and he should not thereafter be entitled to any of the avails of a subsequent sale of the property by Crawford. But, by the contract, the bank was still to hold its notes against Newbanks and Newbanks was still to have the balance of the proceeds of a sale after payment to the bank. The transaction was still a mortgage, and the provision that the deed to Crawford should become an absolute conveyance if the

notes were not paid at maturity was only intended to permit the creditor to foreclose out of court. Long after this bill was filed and jurisdiction of each defendant by personal service had been obtained, the bank contracted to sell the land to one King, who purchased *pendente lite* and was bound to come into this case to protect his interests if he desired, and he is bound by the decree. "The doctrine of *lis pendens* as to persons and property within its operation is 'that the court having jurisdiction of the suit or action is entitled to proceed to the final exercise of that jurisdiction, and that it is beyond the power of any of the parties to the action to prevent its so doing by any transfer or other act made or done after the service of the writ or the happening of such other act as may be necessary to the commencement of *lis pendens*." *Heckmann v. Detlaff*, 283 Ill. 505.

It is contended that the decree must be reversed because of an erroneous description of the property. There was singular carelessness as to the description of the real estate in the court below. This was not a trivial discrepancy, as alleged in appellees' brief. The litigation concerns Lot 5 in "Hickory Ridge." The bill of complaint placed it in the southwest quarter of section 20, in township 21 north, and of range 7 east of the 4th P. M. Trager's intervening petition located it in the same quarter section, township and range, and further described it as in Whiteside county, Illinois. Crawford and the bank, without noticing the discrepancy, "admitted" in their answer the conveyance by Newbanks to Crawford of Lot 5 in Hickory Ridge in the southwest quarter of the southeast quarter of said section 20. On the hearing before the master some witnesses located it in the southwest quarter and others in the southeast quarter of section 20, and no attention was called by any one to the discrepancy. The master described the premises as in the southwest quarter of section 20. None of the

objections to the master's report found any fault with
the description of the premises. The decree followed
the deed and located the premises in the southeast
quarter of said section 20. We presume that the deed
and the decree contain the correct description. As no
one raised this question at all in the court below, so
far as appellants' abstract shows, we are of opinion
that appellants cannot raise the question here for the
first time. Moreover, we conclude that the descrip-
tion should be held sufficient under many cases, of
which *Cumberledge v. Brooks*, 235 Ill. 249, is an ex-
ample. The oral proofs show that Newbanks erected
or repaired a dwelling house on Lot 5 in Hickory
Ridge, and it is evident that all the proofs on both
sides related to the same Lot 5 in Hickory Ridge on
which Newbanks had said building. There is no claim
that there were two subdivisions named Hickory Ridge,
one in the southwest quarter of section 20 and another
in the southeast quarter of section 20. It is evident
that one or the other of these descriptions is incorrect
in naming the quarter section. Eliminating that part
of the description, we have left Lot 5 in Hickory
Ridge in section 20, in the township and range, county
and State aforesaid, and we think this a sufficient
description under all the proofs.

Section 7 of the Mechanics' Liens Act (J. & A.
¶ 7145) provides as follows: "No contractor shall
be allowed to enforce such lien against or to the prej-
udice of any other creditor or incumbrancer or pur-
chaser, unless within four months after completion,
or if extra or additional work is done or material is
delivered therefor, within four months after the com-
pletion of such extra or additional work or the final
delivery of such extra or additional material, he shall
either bring suit to enforce his lien therefor or shall
file with the clerk of the circuit court in the county
in which the building, erection or other improvement
to be charged with the lien is situated, a claim for

lien," etc. Said section further provides: "*Such claim for lien* may be filed at any time after the contract is made and *as to the owner may be filed* at any time after the contract is made and *within two years* after the completion of said contract, or the completion of any extra work or the furnishing of any extra material thereunder," etc. Section 9 of said Act (J. & A. ¶ 7147) relates to the bringing of suits to enforce such liens, and the last sentence of said section is as follows: "Such suit shall be commenced or answer filed within two years after the completion of the contract, or completion of the extra or additional work, or furnishing of extra or additional material thereunder." Without stating the various dates, it is sufficient to say that both the original suit and the intervening petition were brought within these provisions as against Newbanks. If Newbanks by his deed to Crawford had conveyed all interest in the premises, the lienors must have failed because they did not file their claim for lien or begin the suit within four months. If the conveyance to Crawford was but a mortgage, then the lienors, while too late as to the mortgage, had the right to foreclose those liens against Newbanks, subject to the incumbrance. For that reason the court had jurisdiction in this suit to determine what interest Crawford took, and when it found that the Crawford transaction was in fact a mortgage to secure the payment of a debt, then it had jurisdiction to enforce the lien after providing for the priority of the mortgage. The interest of the bank and Crawford being merely a mortgage, they are no longer interested in several of the technical questions which they discuss. Newbanks has not raised these questions.

The decree is affirmed.

*Affirmed.*