(No. 57055.—

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHICAGO, Appellee, v. JOHN T. CONNELLY *et al.* (Henry B. Rossi, Jr., Appellant).

*Opinion filed June 17, 1983.—Rehearing denied September 30, 1983.*

Dennis G. Kral, Ltd., of Dolton, for appellant.

Liebling & Hauselman, of Chicago (Martin F. Hauselman, Patricia O'Brien Norum, and Todd D. Feldman, of counsel), for appellee.

244

JUSTICE SIMON delivered the opinion of the court:

At issue in this case is whether a mechanic's lien claimed by the defendant Henry B. Rossi against property held by a land trustee has priority over a mortgage which existed prior to the filing of the lien. Four apartment buildings were being constructed by defendant John Connelly when Rossi's lien was filed. The plaintiff, First Federal Savings & Loan Association of Chicago (First Federal) held prior mortgages on three of them and alleges that Rossi's lien is unenforceable against it because the information contained in the claim failed to comply with the filing requirements of the Mechanics' Liens Act (Ill. Rev. Stat. 1979, ch. 82, par. 7). This case involves one of the three buildings on which First Federal holds mortgages. We hold that the filing statement contained sufficient information to comply with the statute's requirements and thus Rossi's lien is not unenforceable against First Federal for that reason.

The lien challenged in this case represents the balance due on an oral contract under which Rossi agreed to deliver and install wall-to-wall carpeting in the four apartment buildings being constructed by Connelly. The parties agreed on a total price of $12,102 for the carpeting and its installation in the four buildings. Rossi filed his claim for a mechanic's lien on June 3, 1980. The filing statement claimed a blanket lien of $12,102 against the four properties without apportionment of this total contract price among each of the four buildings. The statement also set forth that Rossi completed all work under the contract on or about March 15, 1980. It did not, however, specify a separate completion date for each building.

Six weeks after Rossi filed his lien, First Federal filed a complaint in the circuit court of Cook County seeking to foreclose on its mortgage on one of the four buildings covered by Rossi's lien notice. Later, in an amended complaint, First Federal included Rossi as a defendant seeking

the exclusion of his rights of redemption. First Federal moved for the entry of an order determining the priority of liens between First Federal, as prior mortgagee, and Rossi, as mechanic's lien claimant; the motion alleged that Rossi's lien was subordinate to its mortgage because the lien claim he filed did not separately disclose the date that work was completed on each building, and failed to apportion the total contract price among the four buildings based on the materials and labor furnished to each. The circuit court held on the pleadings and without receiving any evidence that Rossi's mechanic's lien was subordinate to First Federal's mortgage, and the appellate court affirmed (107 Ill. App. 3d 298).

Section 1 of the Mechanics' Liens Act of 1903 provides that any person who, under a contract with the owner of a lot or tract of land, furnishes labor, materials or fixtures for the construction, alteration or repair of the property "is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land *** and *in case the contract relates to 2 or more buildings, on 2 or more lots or tracts of land, upon all such lots and tracts of land and improvements* thereon for the amount due to him for such material, fixtures, apparatus, machinery, services or labor, and interest from the date the same is due ***." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 82, par. 1.

This lien attaches as of the date of the contract, but the lien is unenforceable against third parties unless the contractor complies with section 7, which provides:

> "No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within 4 months after completion *** he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of deeds of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by the affidavit of himself or herself, or his or her agent or employee,

which shall consist of a brief statement of the contract, the balance due after allowing all credits, and a sufficiently correct description of the lot, lots or tracts of land to identify the same ***." Ill. Rev. Stat. 1979, ch. 82, par. 7.

"As mechanics' liens were not recognized by the common law or in equity but exist only by virtue of statutes creating them and providing a method for their enforcement, such statutes must be strictly construed with reference to those requirements upon which the right depends." (*Schmidt v. Anderson* (1911), 253 Ill. 29, 33; *Robinette v. Servite Fathers* (1977), 49 Ill. App. 3d 585, 586.) The lien is valid only if each of the statutory requirements is scrupulously observed. Once the contractor has complied with the statutory prerequisites, however, the Mechanics' Liens Act should be liberally construed in order to carry out its remedial purpose. (Ill. Rev. Stat. 1979, ch. 82, par. 39.) This court has recognized that the purpose of the Act "is to permit a lien upon premises where a benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials." *Colp v. First Baptist Church* (1930), 341 Ill. 73, 76-77.

We believe that the claim for lien filed by Rossi fully complies with the requirements of section 7. The claim was properly verified and sufficiently described the contract which provided for the delivery and installation of the carpeting. It recited that the balance due on the contract was $12,102. It adequately described the four tracts of land covered in the claim by listing their street addresses and legal descriptions.

Finally, nothing in the claim for lien suggests that the carpet installation was completed in any of the buildings other than on the date set forth in the claim, that is on or about March 15, 1980; nor has First Federal offered any evidence that the work was completed earlier than that date in any of the buildings.

Sections 1 and 7 specifically authorize the filing of a single claim statement covering multiple parcels. Section 7 provides: " *** In the event the contract relates to 2 or more buildings on 2 or more lots or tracts of land, then all of these buildings and lots or tracts of land may be included in one statement of claims for a lien." (Ill. Rev. Stat. 1979, ch. 82, par. 7.) Nothing in the language of section 7 requires that the filing statement contain different information when it covers multiple parcels.

First Federal, however, claims, and the appellate court held, that in mechanics' liens claim filings involving multiple parcels this court's decision in *Schmidt v. Anderson* (1911), 253 Ill. 29, added two requirements to those provided by the statute. First Federal interprets *Schmidt* as requiring that in such cases the contractor filing the mechanic's lien must apportion the contract price among each of the various parcels based on the services and materials furnished to each. First Federal also interprets *Schmidt* as requiring that a claim statement covering multiple parcels must separately disclose the date that the claimant completed work on each parcel of the multiple parcel contract. The appellate court agreed with First Federal's interpretation of *Schmidt* and held that Rossi's mechanic's lien claim failed to comply with these judicially created requirements; the court for this reason concluded that Rossi's lien was unenforceable as to First Federal and subordinate to First Federal's mortgage claim.

We disagree with the way the appellate court applied *Schmidt*. In that case a contractor filed a mechanic's lien claim against four houses which had been improved under a single contract. The contractor claimed a blanket lien against all four houses for the contract price and did not apportion that amount among them. Evidence presented in *Schmidt* showed that, at the time the contractor filed his claim, work had been completed on three of the houses more than six months earlier and on one of the houses (the

Oak Street house) less than four months earlier. The party challenging the lien claim argued that the filing was tardy with respect to the three houses because section 7 of the Mechanics' Liens Act requires that before a lien is enforceable against a third party it must be filed "within 4 months after completion." (Ill. Rev. Stat. 1979, ch. 82, par. 7.) The claimant responded that sections 1 and 7 of the Act specifically authorize the filing of a lien with respect to multiple parcels improved under a single contract and that in such situations the four-month limitation on filing begins to run only after work on the last parcel has been completed.

The court aptly stated the issue in *Schmidt*:

> "Previous to the passage of said act of 1903 a contractor could not file a single claim for lien for the whole amount due him for labor and materials for the erection of houses on lots which were not adjoining or adjacent to one another, even though all labor was performed or materials were furnished under one contract. *** Manifestly, the present act, as amended in 1903, was passed (and especially the amendments to sections 1 and 7) for the purpose of permitting the contractor to file one claim against separate buildings on lots that were not adjacent to or adjoining each other, provided the work was performed or material furnished for all of such buildings under one entire contract. *The vital question in this case is whether the legislature intended by these changes to permit such a claim to be filed against buildings erected on several different lots under one entire contract, even though the work on some of the houses had been performed and the materials for such houses were furnished more than four months before the claim for lien was filed or the suit begun to enforce the lien.*" (Emphasis added.) 253 Ill. 29, 31-32.

The court observed that the purpose of the four-month limitation was to provide ample notice to third parties "of the existence, nature and character of the lien." (253 Ill. 29, 32.) The court concluded that to accept the contractor's failure to file the lien claim until he completed work on the

last house would subvert the purpose of the four-month limit on filings by extending the time that third parties were entitled to receive notice of claims against the first three houses. The court held:

"In our judgment the legislature did not intend to permit two or more buildings on two or more tracts of land to be included in one claim for lien unless the claim was filed within four months after the last labor was performed or the material furnished on each of the buildings." 253 Ill. 29, 33.

We hold that the dating and apportionment requirements discussed in *Schmidt* are necessary only to enforce the four-month limitations period under circumstances analogous to the facts of that case. In *Schmidt* there was evidence that work on some of the houses had been completed more than four months before the filing of the lien claim. Here, there is no such evidence. In fact, the notice which was filed by Rossi can be construed to state that carpet installation in each of the four buildings was completed on or about March 15, 1980, a date substantially less than four months prior to June 3, 1980, the date on which the lien was filed. Thus, in the absence of evidence to the contrary, we view the contents of the claim as adequate from a time standpoint to preserve its priority.

As for the apportionment requirement, *"Schmidt* did not lay down a *per se* rule that each time multiple properties are involved, allocation is required." (*Barker-Lubin Co. v. Unknown Heirs or Devisees* (1982), 106 Ill. App. 3d 89, 92.) It is true that this court in *Schmidt* invalidated the lien claimed against the Oak Street house even though the contractor had filed the claim within four months of completing work on that parcel. The court stated that it ruled the Oak Street lien invalid "because there are no data in the claim wherefrom the proper amount could be apportioned to that house." (253 Ill. 29, 33.) In doing so, however, this court was only enforcing the four-month limitation on filing. The court insisted that, when a lien claimant

files tardy claims along with timely ones, he must apportion the amount of the claim against each property in order to ensure that the stale claims are completely separated from the enforceable ones. When the filing is accomplished within four months of the completion of work on *each* of the parcels that are the subject of the claim, all third parties receive notice of the lien within the four-month period intended by the legislature. The purpose of the limitation period is satisfied, and the reason for apportionment announced in *Schmidt* is not present.

First Federal claims that the rights of prior mortgagees are prejudiced by multiple lien claims unless lien claimants apportion their claims among the multiple parcels covered in the claim. Unless apportionment is required, First Federal fears that a subtle form of extortion is sanctioned in which prior mortgagees will have to negotiate with mechanics' liens claimants as to the amount of a settlement before they can clear title to properties in which they share interests.

We believe that the timely filing of a blanket lien provides prior mortgagees with sufficient notice of a lien against the property, even though it does not disclose the specific amount that can be enforced against each individual parcel. Even when a lien claimant files a claim for a specific amount against each parcel the prior mortgagee does not have complete assurance of the accuracy of the amount of the claim, for section 7 provides that "[n]o such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien *** unless it shall be shown that such error or overcharge is made with intent to defraud ***." (Ill. Rev. Stat. 1979, ch. 82, par. 7.) In any event, the mortgagee can easily obtain information about the specific amount that is enforceable against him by communicating with the lien claimant or if necessary in discovery. See *Provident Federal Savings & Loan Association v. Realty Centre Ltd.*

(1983), 97 Ill. 2d 187, 192-93.

The language of the Mechanics' Liens Act, while explicitly authorizing the filing of liens against multiple parcels, nowhere requires an apportionment of the total claim among the specific parcels. (See Ill. Rev. Stat. 1979, ch. 82, pars. 1, 7.) We see no reason to establish filing requirements other than those provided in that act. The provisions of the Act "disclose a manifest legislative intent to remove, as far as practicable, technical requirements as a material element of the right to enforce a valid lien, and to clarify questions touching the materiality of the steps prescribed by the statute." (*United Cork Cos. v. Volland* (1937), 365 Ill. 564, 572.) When the lien claimant has strictly complied with each of the statutory requirements, he has a right to expect that his lien will be completely enforceable:

> "The doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path marked by the statute, nor as an ambuscade from which an adversary can overwhelm him for an immaterial misstep. Its function is to preserve the substantial rights of those against whom the remedy offered by the statute is directed, and it is never employed otherwise." *United Cork Cos. v. Volland* (1937), 365 Ill. 564, 572.

We therefore reverse the judgments of the appellate and circuit courts and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*