WATER PRODUCTS COMPANY OF ILLINOIS, INC., Plaintiff-Appellee, *v.* GLEN GABEL *et al.*, Defendants-Appellants.

Second District   No. 82—920

Opinion filed December 29, 1983.

Daniel J. Kramer, of Yorkville, for appellants.

Walter H. Hamilton, Jr., of Geneva, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

In this case, the defendants, who are the owners of a portion of the real estate parcels alleged to be subject to plaintiff's blanket mechanic's lien, appeal from the trial court's ruling that plaintiff has a valid mechanic's lien on their parcels for a *pro rata* share of the amount due on the account, less credits for some goods not incorporated into the premises.

The evidence in the trial court established that defendant Glen Gabel, the equitable owner of lots one through 20 of Millers subdivision, entered into an oral contract with plaintiff, a seller of underground water works material, whereby plaintiff would furnish water main materials to Gabel. While the property was an open field with no improvements installed at that time, a plat of subdivision was of record. The plat, filed in 1972, showed the lots, a 66 foot wide street which bisected the tract from west to east identified as "MILL (hereby dedicated) STREET," and the approval of the plat by the city of Yorkville. At the time the plat was filed, the property was owned by Loren E. and Rhonda L. Miller. Pursuant to the contract and as shown by invoices attached to the lien claim, water main materials were either picked up by Gabel or delivered to the subdivision. Gabel used the material in installing a water main in the street shown on the plat and extending it to connect to the city water supply.

Plaintiff's delivery of materials, having a value of $18,662.38, was completed on October 18, 1977. Gabel paid $2,000 on the contract. On December 13, 1977, plaintiff filed its claim for lien in the recorder's office against Grundy County National Bank & Trust Company

(Grundy Bank) under Trust No. 395 and defendant Glen Gabel as owners of lots 1 through 22 and for a lien on said land and improvements.

Defendant Ronald Cobb, as the holder of the beneficial interest of Old Second National Bank of Aurora land trust No. 2925, purchased lots 1 through 14 and 19 through 20 in fall 1978 from Gabel after Grundy Bank, which had a security interest in the property, foreclosed on it and the day before the scheduled foreclosure sale. Lots 15 through 18 were purchased by other parties. At the time Cobb purchased the lots, the water main installed by Gabel was not connected to any of the lots. Sometime after Cobb's purchase, his company performed an operation known as stubbing into the various lots off the water main and arranged for the city of Yorkville to do the tap ins from the cast-iron main in the street to the individual lots.

On September 11, 1979, plaintiff filed its complaint against defendants to enforce its lien against all 20 lots and for a personal judgment against Gabel. On February 1, 1982, an agreed order was entered between plaintiff and the subsequent purchasers of lots 15 through 18 satisfying and releasing plaintiff's lien against their four lots pursuant to payment by them to plaintiff of $3,800, but expressly not affecting the remainder of plaintiff's suit.

At the conclusion of the trial, the court entered its decree of lien foreclosure and sale. The original owner, Gabel, was defaulted. The court found that Grundy Bank, as trustee, owned all of the lots at relevant times, and that, pursuant to the oral contract between Gabel and the plaintiff, the plaintiff had a valid subsisting first lien on lots 1 through 14 and 19 through 20. The court assessed four-fifths of the amount due on the contract (lien claim) amounting to $12,476.80, four-fifths of the costs, and interest against defendants. In the event of default of such payment, a sheriff's sale was authorized.

Defendants first contend on appeal that Illinois law requires an apportionment on the face of the lien claim as to the amount due on separate parcels in order for a blanket lien to be enforceable against subsequent purchasers.

In support of this contention, defendants principally rely on *Schmidt v. Anderson* (1911), 253 Ill. 29, and the interpretation and application thereof in *First Federal Savings & Loan Association v. Connelly* (1982), 107 Ill. App. 3d 298. The appellate court in *First Federal* interpreted *Schmidt* to mean "that a third person dealing with the property should be able to learn from looking at the lien whether a lien exists and in addition the nature and character of the lien" (107 Ill. App. 3d 298, 301). It is apparent to us that an examina-

tion of a blanket lien like plaintiff's would not reveal to third persons, like defendants, whether the lien includes stale or otherwise unviable claims or the amount that could be apportioned to each parcel that has a viable claim on it. We, therefore, would be prone to agree with defendant's contention that, because no apportionment existed on the face of the lien as to the amount claimed to be due on separate parcels, it cannot be enforced against subsequent purchasers like defendants. However, in *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, our supreme court reversed the appellate court in that case and considerably narrowed its prior holding in *Schmidt*.

In *First Federal*, the supreme court held the dating and apportionment requirements discussed in *Schmidt* to be necessary only to enforce the four-month limitations period under circumstances analogous to the facts of that case. The court went on to say that "[a]s for the apportionment requirement, '*Schmidt* did not lay down a *per se* rule that each time multiple properties are involved, allocation is required.' [Citation.]" (97 Ill. 2d 242, 249.) Finally, the court said "[t]he language of the Mechanics' Liens Act, while explicitly authorizing the filing of liens against multiple parcels, nowhere requires an apportionment of the total claim among the specific parcels," and "[w]e see no reason to establish filing requirements other than those provided in that act." 97 Ill. 2d 242, 251.

■ The supreme court's recent decision in *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, is controlling on this issue. There is no indication here that the lien claim was other than timely regarding the several parcels. (See 97 Ill. 2d 242, 249.) Therefore, plaintiff's lien claim did not fail for lack of apportionment.

Defendants next cite *Cronin v. Tatge* (1917), 281 Ill. 336, for the proposition that an improvement done on an adjoining street must be connected with an improvement on the subject property to be lienable under the act. Plaintiff's lien, according to defendants, was for goods delivered to the original owner which were incorporated by him into a water main to service all 20 lots of the subdivision. However, it was located under a street and not connected to the real estate so that it was not lienable pursuant to *Cronin*.

The evidence adduced at trial showed that the water main was placed in the street. Plaintiff's vice-president testified that he personally observed the pipe being installed on the street shown on the plat of subdivision, admitted into evidence, and stated that it was customary to install such pipe in the dedicated portion. Defendant Cobb likewise testified that the water main was in the 66-foot right-of-way ded-

icated to the city.

■ The street in question was that designated "MILL (hereby dedicated) STREET" on the plat of subdivision filed in 1972 by the then-owners of the tract, the Millers. It is apparent that the street was to be the subject of a statutory dedication. A statutory dedication occurs when the owner of property files or records a plat which marks or notes on the plat portions of the premises as donated or granted to the public; it results in the conveyance of the dedicated portions in fee simple to the public. (*Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 776; Ill. Rev. Stat. 1981, ch. 109, par. 3.) In this case, there was a plat filed showing the dedication and, at the same time, showing on its face the grantor's donative intent.

■ However, the testimony at trial established that the city of Yorkville did not accept the street until some time in 1980. When, as here, an owner of land lays it out in lots with streets and has it platted, the municipality acquires no interest in the streets until it accepts them. (See *La Salle National Bank v. City of Chicago* (1974), 19 Ill. App. 3d 883, 886, citing *Zemple v. Butler* (1959), 17 Ill. 2d 434, 436.) The approval of the plat by the city council in July 1972 did not constitute an acceptance of streets shown thereon. (*Nimpfer v. Village of Fox Lake* (1929), 334 Ill. 46, 50.) Acceptance of the street by the municipality is necessary to complete the dedication. (*Stevenson v. Lewis* (1910), 244 Ill. 147, 154; *Iglehart v. Chicago & Alton Ry. Co.* (1909), 241 Ill. 268, 272; *Pilgrim v. Chamberlain* (1968), 91 Ill. App. 2d 233, 240; 11 E. McQuillan, Municipal Corporations sec. 33.43, at 737; sec. 33.45, at 744 (3d ed. 1983).) Therefore, while Illinois statute provides that the dedicated portion is conveyed in fee simple and the municipality holds the street in trust for the uses and purposes set forth or intended (Ill. Rev. Stat. 1981, ch. 109, par. 3), the fee title vests in the municipality when accepted (*Hamilton v. Chicago, Burlington & Quincy R.R. Co.* (1888), 124 Ill. 235, 243; see *Shoreline Builders Co. v. City of Park Ridge* (1965), 60 Ill. App. 2d 282, 291) so that the fee title here was not in the city of Yorkville until 1980.

■ Until acceptance the fee remained in the original proprietors, hence a conveyance of abutting lots before acceptance carried the title to the center of the street. (*Iglehart v. Chicago & Alton Ry. Co.* (1909), 241 Ill. 268, 272.) When the Millers conveyed the lots in question (the fee of the street then being in them), such conveyance also conveyed the fee in the street to their grantee(s)—not the fee absolutely, but the fee burdened with the offer of dedication which had been made but not yet accepted. (See *Hamilton v. Chicago, Burlington & Quincy R.R. Co.* (1888), 124 Ill. 235, 248-49.) Therefore,

it appears that Gable and his grantees including Cobb,[1] as successors in title to the Millers of the lots in question, also owned the fee to the adjoining street, since lots 1 through 20 included all lots on both sides of the street (*Iglehart v. Chicago & Alton Ry. Co.* (1909), 241 Ill. 268, 272).

The assertion in plaintiff's brief, unsupported by citation of authority, that Gabel owned the land in which plaintiff's materials were installed thus does find support in Illinois case law. However, the conclusion that *Cronin v. Tatge* (1917), 281 Ill. 336, has no application to the instant case does not necessarily follow. Though the street adjoining the lots was owned by private parties rather than a public entity at the time the contract was made and the materials were installed pursuant thereto, the strip of land in question was a platted street and as such carried a restriction requiring its use as a street (see *Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 777-78).

■■ ■ Though the Mechanics' Lien Act extends a lien to work done and material furnished for an improvement in the street, such an improvement must be connected with an improvement on the lot or tract of land. (*Cronin v. Tatge* (1917), 281 Ill. 336, 338.) The holding in *Cronin* is not restricted to municipal or public streets, and it is therefore applicable here. There is no evidence in this case that the water main in the street was connected to any improvement on the lots or that there were any improvements on the lots. The trial court therefore erred in ruling that the plaintiff had a valid lien on the subject property pursuant to the Mechanic's Lien Act and in entering its decree of lien foreclosure and sale. That decree must be and is hereby vacated and reversed.

■ The evidence here did show that after Cobb purchased his lots an operation known as stubbing in was done and that tap ins to the individuals lots were made. We are not unmindful that the adjoining lots were probably benefitted once these connections were made. However, the Mechanics' Lien Act is in derogation of the common law and its provisions must be strictly construed, and no one can claim a lien unless it clearly appears the requirements of the law have been complied with. (*Cronin v. Tatge* (1917), 281 Ill. 336, 337.) Had the legislature seen fit to extend the lien to cover the present state of facts it could have used apt words in doing so, and, while perhaps the wording of section 1 of the Act and meaning of the language used are not as clear as might be desired, it does not expressly nor by neces-

---

[1]Gabel's grantees of lots 15 through 18 paid their share of the lien claim prior to trial, and the lien was released as to their lots.

sary implication extend the application of the lien to this type of situation. 281 Ill. 336, 338-39.

The complaint in this case consisted of two counts: the first was for a lien against the property, and the second was for a personal judgment against defendant Glen Gabel. The decree entered disposed of the first count only and contained the express finding required for an appeal to be properly taken pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). Having vacated and reversed that decree, we remand the cause to the trial court for further proceedings on count II.

Reversed and remanded.

HOPF and NASH, JJ., concur.