JAY STEINBERG, Trustee, Plaintiff-Appellant, v. CHICAGO TITLE AND TRUST COMPANY *et al.*, Defendants-Appellees (Reimer Brothers, Inc., Plaintiff, v. D & W Equipment Company *et al.*, Defendants).

First District (3rd Division)   No. 83—1643

Opinion filed March 31, 1986.

Holleb & Coff, Ltd., of Chicago (Ira Gould, of counsel), for appellant.

Anthony L. Frink, of Chicago, for appellee American National Bank and Trust Company.

Ned Langer, of Chicago, for appellee La Salle National Bank.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

This appeal arises from an order of the trial court granting the motions of defendants American National Bank and Trust Company of Chicago, La Salle National Bank and numerous individual defendants for summary judgment against plaintiff Jay Steinberg as trustee in bankruptcy for D & W Equipment Company. We affirm.

D & W Equipment Company, an Illinois corporation, initiated this lawsuit against numerous defendants to foreclose a "blanket" me-

chanic's lien it had filed on September 5, 1979. The lien related to excavation and grading work performed by D & W on subdivided property presently known as Charlemagne Subdivision, Hoffman Estates, Illinois. The lien was for the amount of $104,419, stated a completion date of June 8, 1979, and was asserted against three pieces of property defined by three perimeters metes and bounds descriptions.

On August 29, 1980, Jay Steinberg, as trustee in bankruptcy for D & W, was substituted as plaintiff in the mechanic's lien foreclosure suit. Plaintiff then filed a second amended complaint to foreclose D & W's "blanket" lien claim. The second amended complaint named additional individual defendants and sought foreclosure of the "blanket" lien claim on only 146 lots in Unit 1 and 20 lots in Unit 3 of the Charlemagne Subdivision rather than on the entire subdivision which the lien covered. Of the named defendants in plaintiff's second amended complaint, defendants American National Bank and Trust Company of Chicago, as trustee under trusts Nos. 509353, 51512 and 51252, La Salle National Bank as mortgagee under document No. 24629245, and various individual defendants, comprised of individual lot owners, and their respective mortgagees filed motions for summary judgment. All of these defendants are third parties to D & W's mechanic's lien claim. Plaintiff filed his response. The trial court granted the motions for summary judgment. It also dismissed all named defendants and dismissed the second amended complaint with prejudice. The court based its dismissal on two violations of section 7 of the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 7): (1) that plaintiff's mechanic's lien did not contain a sufficiently correct description of the land covered and (2) that plaintiff's "blanket" lien claim failed to allocate[1] by specific lot the amount due under the lien.

On appeal plaintiff asserts three arguments: (1) that the mechanic's lien claim filed by D & W correctly and adequately described the property against which the lien was asserted; (2) that allocation of the monetary figure claimed to be due and owing under a mechanic's lien is not required for a subdivided tract if the property was a single tract of land when the contract was entered into; and (3) that an exception to the allocation and dating rule exists when an excavator performs work only on raw land which is later subdivided because the rule imposes an impossible burden on an excavator.

■ We first address plaintiff's argument that the mechanic's lien filed by D & W correctly and adequately described the property

---

[1]Hereinafter, the term "allocate" shall be used interchangeably with the term "apportion" and shall have the same meaning.

against which the lien was asserted. Historically, mechanics' liens were not recognized by the common law or in equity, but rather, they have always been statutory in nature. Since mechanics' liens are in derogation of the common law, they must be strictly construed regarding the requirements upon which they depend (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 246, 454 N.E.2d 314, 316; *Schmidt v. Anderson* (1911), 253 Ill. 29, 33, 97 N.E. 291, 292), and the liens are valid only if each of the statutory requirements is scrupulously observed. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 246, 454 N.E.2d 314, 316.) Additionally, where the interests of third parties will be affected, a stricter construction of the Mechanics' Liens Act will be adhered to than what is followed in cases arising between the mechanic or materialman and the original owner. (*Springer v. Kroeschell* (1896), 161 Ill. 358, 367, 43 N.E. 1084, 1087.) Therefore, since all defendants in this appeal are third parties, we are required to strictly construe the Act.

The focus of plaintiff's first argument is that because the contract between D & W and the original owner was entered into when the land was known by three perimeter metes and bounds descriptions, the lien attached to the property as described at that time. Therefore, plaintiff reasons, the three perimeter metes and bounds descriptions of the land were the proper descriptions to be used in the D & W lien claim.

■ While it is true that a mechanic's lien attaches as of the date of the contract, it remains unenforceable against third parties unless the contractor complies with the prerequisites set forth in section 7 of the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, par 7; *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 245, 454 N.E.2d 314, 316.) Under section 7, a claimant cannot enforce a claim for lien against an ultimate third party unless he has either filed the lien within four months after work completion with the recorder of deeds or has brought an enforcement suit against the third party. The filed lien must be verified and must consist of a brief statement of the contract, the balance due after allowing all credits and a sufficiently correct description of the lot, lots or tract of land to identify same. (Ill. Rev. Stat. 1981, ch. 82, par. 7.) As a result, while a lien technically attaches to the property when the contract is entered into, it remains unenforceable until properly filed in compliance with section 7.

· The record reflects that D & W entered into its contract to perform excavation work on February 8, 1978. At that time, the prop-

erty was described by three perimeter metes and bounds descriptions. The plat which subdivided some of this property into 146 lots known as Charlemagne Subdivision Unit 1 was filed on April 21, 1978. The plat for the area presently known as Charlemagne Subdivision Unit 3 was filed November 3, 1978. Both plats designated the property according to its legal description. Although D & W filed its lien claim after the plats for Units 1 and 3 were recorded, the lien contained the three perimeter metes and bounds descriptions rather than the recorded legal descriptions as indicated by the plats.

■ Plaintiff argues that the metes and bounds descriptions used in the lien complied with section 7 because they sufficiently and correctly described the tracts of land to enable third party identification. We do not agree. The purpose of the description requirement is to protect third parties from purchasing or financing real property without being aware that it is encumbered. (*O'Brien v. Krockinski* (1893), 50 Ill. App. 456, 459.) To adequately protect the notice requirement due third parties, the general rule developed that where the interests of third parties are to be affected a stricter construction of the Act is required. (*Springer v. Kroeschell* (1896), 161 Ill. 358, 367, 43 N.E. 1084, 1087.) We believe that a strict statutory construction of the Act's wording requiring "a sufficiently correct description of the lot, lots or tract of land to identify the same" (Ill. Rev. Stat. 1981, ch. 82, par. 7) requires that a lien claimant must use the legal description of the property as indicated by plat when such a plat has been recorded in order to bind third parties. We do not believe that the three perimeter metes and bounds descriptions contained in D & W's lien would provide the average third-party purchaser or encumbrancer with enough information to readily identify the property affected by the lien through the use of local public records. Additionally, since a greater degree of certainty in the description of property is required when third parties are involved, the burden is on the claimant to ensure that third parties are readily able to ascertain the status of the property they wish to purchase or finance.

■ Here, D & W did not file its lien until approximately 1½ years after the property had been recorded by plat. The foreclosure action was not filed until five months later. As a result, at the time the lien was filed, the land to which the lien sought to attach had changed from a raw tract of land identified by three perimeter metes and bounds descriptions to subdivided land recorded by plat and sold to, or encumbered by, third parties. In such a situation, the use of metes and bounds descriptions when a plat legal description is available places an undue burden in derogation of section 7 on third parties

by forcing them to decipher such descriptions to determine the status of the property. As such, we believe that D & W failed to meet its burden of ensuring that third parties could readily ascertain the status of the property in question.

■ Plaintiff also argues that as long as the recorder of deeds' office files liens which utilize perimeter metes and bounds descriptions against property legally described by plat, there is no problem with description or lack of notice to third parties. We do not agree. It is not the duty of the recorder of deeds' office to ensure compliance with the Act's requirement of notice to third parties. Instead, because the Act is purely statutory in nature and an addition to the ordinary remedies afforded by common law, it is the obligation of the claimant alone to bring himself strictly within the terms of the Act (*Roth v. Lehman* (1953), 1 Ill. App. 2d 94, 97, 116 N.E.2d 413, 415) and to assure the future collectibility of a claimed debt. Therefore, a claimant is chargeable with notice of every fact which is or could be claimed necessary to enforce a lien. When a plat has been recorded for property against which a claimant desires to file a lien, it is the claimant's obligation to have knowledge of the recording of the plat in order to use its legal description in the lien. We believe that the use of the legal description of property as recorded by plat will ensure the enforcement of a lien against third parties by providing them with a readily available, sufficient and correct notice of the lien.

Lastly, we do not find plaintiff's reliance on case law dating from the late 1800's to early 1900's which allowed for lax property descriptions in mechanics' liens persuasive. (See, *e.g., Sorg v. Pfalzgraf* (1903), 113 Ill. App. 569; *Denkman v. Newbanks* (1921), 220 Ill. App. 515; *Grandquist v. Western Tube Co.* (1909), 240 Ill. 132, 88 N.E. 468; *Nelson v. Urban* (1925), 236 Ill. App. 447; *Weil v. Bomash* (1925), 237 Ill. App. 544.) The majority of these cases relate to lien claims filed against the original owner and, as such, do not require the specificity of description a lien claim against a third party requires. Furthermore, our environment is in a state of rapidly expanding technology, high mobility and extensive construction. We therefore believe that precise property descriptions and a greater degree of specificity are required to preserve the viability of the recording system as a means of providing readily ascertainable information to the highly mobile members of our population who comprise the majority of third-party purchasers and encumbrancers. While cases plaintiff cited have not been overruled by our supreme court, we believe that their vitality has been diminished by the increased mobility of today's society, and are, therefore, not sound support for plaintiff's position.

■ We next address plaintiff's second argument that the trial court incorrectly held that D & W's "blanket" lien claim was defective because it failed to allocate the dollar amount claimed due among the various individual lots in the Charlemagne Subdivision. As support for this position, plaintiff contends that the allocation rule for multiple properties does not apply to subdivided land which was a single tract of land when the contract was entered into. Therefore, plaintiff argues, the judicial interpretation of section 7 which requires allocation in certain multiple property lien claims is not applicable. We reject this argument.

Sections 1 and 7 of the Act (Ill. Rev. Stat. 1981, ch. 82, pars. 1, 7) specifically provide a contractor with the right to file a single ("blanket") lien claim statement which covers multiple parcels of land. Section 7 states that: "In the event the contract relates to 2 or more buildings or 2 or more lots or tracts of land, then all of these buildings and lots or tracts of land may be included in one statement of claims for a lien." (Ill. Rev. Stat. 1981, ch. 82, par. 7.) Here, D & W originally filed a foreclosure action to enforce a "blanket" lien recorded pursuant to section 7. The lien involves work performed on 166 lots in a subdivision. The subdivision was recorded by plats over a two-year period. Yet, while D & W took advantage of section 7 by filing a "blanket" lien against the entire subdivision and later enforcing the lien against only 166 lots in the subdivision, plaintiff argues that D & W should not be bound by the judicially imposed requirements relating to section 7. According to plaintiff, since the D & W contract attached to a single, unsubdivided tract of land, the mere fact that multiple properties are now involved does not make the judicially imposed requirements of dating and allocation issues in this case.

At the summary judgment hearing, it was established that D & W entered into the contract on February 8, 1978. It was also established that the plat of subdivision for Charlemagne Unit 1 was recorded on April 21, 1978, and the plat for Unit 3 was recorded on November 3, 1978. The record does not indicate that D & W performed any work prior to the plat for Unit 1 being recorded. However, plaintiff admits that D & W performed no work on the area known as Unit 3 until May 6, 1979, approximately six months after the plat for the area was filed. Therefore, based on ᵗhe record, we must conclude that D & W performed excavation work only on subdivided land recorded by plat. We find it irrelevant that the lien attached to unsubdivided land because the land was in that state when the contract was made. Plaintiff is presently seeking to enforce D & W's "blanket" lien against only certain lots which now comprise the originally unsubdivided land.

These lots are now owned or encumbered by third parties. Clearly, there can be no question that plaintiff's lien involves multiple properties and third parties. Therefore, to enforce D & W's "blanket" lien, the lien must comply with the express and judicially imposed requirements of section 7.

In *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 454 N.E.2d 314, the supreme court established the proper application of the allocation and dating rule originally promulgated in *Schmidt v. Anderson* (1911), 253 Ill. 29, 87 N.E. 291. In formulating its rule of allocation, the *Schmidt* court observed that the purpose of the four-month filing limitation is to provide ample notice to third parties "of the existence, nature and character of the lien." (253 Ill. 29, 32,, 97 N.E. 291, 292.) As a means of upholding the four-month filing limitation of the Act, the *Schmidt* court held that:

> "Had this claim for lien stated specifically as to when the last work was performed or material furnished on each of the separate houses, then, if the labor was performed or material furnished, in accordance with said statement, on any particular house within four months of the time the claim was filed, a claim for such labor and material furnished on that house could have been enforced as a lien thereon, even though the labor or material for any of the other houses was shown to have been performed or furnished more than four months before the claim was filed." (253 Ill. 29, 33, 97 N.E. 291, 292.)

Several cases interpreted *Schmidt* as requiring a *per se* rule of apportionment in situations involving a single lien claim filed against multiple properties. (See *Federal Savings & Loan Insurance Corp. v. American National Bank & Trust Co.* (1983), 115 Ill. App. 3d 426, 450 N.E.2d 820.) But see *Baker-Lubin Co. v. Unknown Heirs of Devisees* (1982), 106 Ill. App. 3d 89, 435 N.E.2d 493.

▆ In *Connelly*, however, the supreme court clarified the *Schmidt* decision and determined that there is no *per se* rule of allocation requirement in liens involving multiple properties. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 249, 454 N.E.2d 314, 318.) The *Connelly* court held that "the dating and apportionment requirements discussed in *Schmidt* are necessary only to enforce the four-month limitations period under circumstances analogous to the facts of that case." (97 Ill. 2d 242, 249, 454 N.E.2d 314, 318.) In *Schmidt,* there had been evidence that some of the houses had been completed more than four months prior to the filing of the lien claim. (*Schmidt v. Anderson* (1911), 253 Ill. 29, 32, 97 N.E. 291, 294.) In *Connelly,* there was no evidence of a late filing on the face of

the lien claim or otherwise. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 249, 454 N.E.2d 314, 317.) In finding the *Schmidt* requirement of apportionment not applicable to the facts before it, the *Connelly* court emphasized that only when a lien claimant files tardy claims along with timely ones must he apportion the amount of the claims against each piece of property to ensure that stale claims are completely separated from the enforceable ones. (97 Ill. 2d 242, 249-50, 454 N.E.2d 314, 318.) The court further explained that the sole reason that the lien in *Schmidt* was found invalid and the rule of apportionment arose was because the work for which the lien was filed was completed, regarding some of the property, more than four months prior to the filing of the lien. Yet, the lien did not indicate the amount of claims which could be apportioned to the timely claims. As a result, the lien was found to be unenforceable as written. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 249, 454 N.E.2d 314, 318.) The judicially created enforcement requirements of dating and apportionment are imposed only in situations where it is necessary to enforce the four-month filing limitation which provides for prompt notice to third-party purchasers and encumbrancers.

■ Plaintiff seeks to apply the *Connelly* decision favorably to uphold D & W's lien by claiming that because the lien claim reflects that the last date of work was performed within the four-month filing period requirement, the lien is valid on its face. It is true that the lien on its face does not give any indication that work was performed on certain lots in the subdivision outside the four-month filing requirement. However, in plaintiff's brief and in the document entitled amended affidavit of Robert Walker, plaintiff admits that word was done in the June 1979 time period only on certain lots against which the lien is claimed. Thus, plaintiff, by his own admission in the amended affidavit of Robert Walker, has provided the trial court and this court with evidence that work on some of the subdivided property had been completed more than four months prior to the filing of the lien claim. Clearly, plaintiff's reliance on the facial validity of the lien claim as proof that the lien complies with the four-month filing requirement of the Act because it shows a completion date of June 1979, thereby rendering apportionment inapplicable, is without merit. Therefore, D & W filed tardy claims along with timely claims. As a result, and in accordance with the *Connelly* holding and its interpretation and reaffirmation of the *Schmidt* decision, D & W was required to allocate the amount of its lien claim among the individual lots and indicate when work was performed on each lot. D & W's failure to date and appor-

tion its lien renders the entire lien claim invalid and defective on its face because there is no basis in the lien on which to separate stale claims from timely filed ones. Therefore, we affirm the decision of the trial court on this issue.

■ In his final argument, plaintiff contends that an exception to the allocation and dating rule exists -for an excavator who performs work only on raw land which is later subdivided where the number of lots and nature of work make allocation and dating an impossible burden. We do not agree.

Plaintiff cites no law to support his position. To the contrary, the law in Illinois draws no such distinction. (Ill. Rev. Stat. 1981, ch. 82, par. 7.) In fact, plaintiff's argument of impossibility is not even supported by the record. Prior to this appeal, D & W settled and released its lien claims against certain individual lots, and these claims were subsequently dismissed from this case. Additionally, the books and records of D & W indicate that D & W kept records of the work done and the time spent on both Charlemagne Unit 1 and Unit 2.

In the case of *Federal Savings & Loan Insurance Corp. v. American National Bank & Trust Co.* (1983), 115 Ill. App. 3d 426, 450 N.E.2d 820, this court held that a contractor that furnished labor and materials to repair an integrated sewer and water system of a subdivision could have allocated its lien claim by "dividing its total claim by the total number of lots in the subdivision, by apportioning its claim based on front lot footage measurements of the homes in the subdivision or by choosing any other suitable method." (115 Ill. App. 3d 426, 431, 450 N.E.2d 820, 824-25.) Clearly, a similar apportionment method could have been utilized by D & W. Furthermore, the fact that *Federal Savings & Loan Insurance Corp.* required a *per se* rule of apportionment in no way diminishes the validity of its apportionment scheme in the wake of the *Connelly* decision, which clearly upheld the *Schmidt* requirement of apportionment in certain circumstances. See also *Barker-Lubin Co. v. Unknown Heirs or Devisees* (1982), 106 Ill. App. 3d 89, 435 N.E.2d 493.

Lastly, the legislature, by creating the Mechanics' Liens Act, provided a certain group of individuals with an extraordinary right. While we recognize that excavation work performed on land is quite distinct from the construction of structures on land, it is the province of the legislature to make such a distinction within the Act and amend the Act appropriately. We find that no exception exists under the current act for an excavator who performs work on raw land. As a result, an excavator, like any other type of contractor, must keep a record of when work has been completed on each lot, and record his

lien claims seriatim within four months of the completion of work on each lot to preserve the right to enforce his claims. Apportionment will not be required only if the claimant can show that the work was completed on all the lots within four months of the filing of a "blanket" lien claim.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McGILLICUDDY and WHITE, JJ., concur.