EDWARD ELECTRIC COMPANY, Plaintiff-Appellant and Cross-Appellee, v. AUTOMATION, INC., *et al.*, Defendants-Appellees and Cross-Appellants (Emery Air Freight, Inc., Counterplaintiff-Appellee; Anchor Conveyors, Inc., Counterdefendant-Appellant).

First District (4th Division)   Nos. 86—3479, 86—3519 cons.

Opinion filed August 27, 1987.—Rehearing denied January 21, 1988.

Joseph D. Keenan III, of Doss, Puchalski & Keenan, Ltd., of Chicago, for appellant Edward Electric Company.

Jeanine L. Stevens, of Robert D. Kolar & Associates, of Chicago, and Kasimer & Ittig, P.C., of Washington, D.C. (Gerard W. Ittig and Robert H. Rubenstein, of counsel), for appellant Anchor Conveyors, Inc.

Elliott D. Hartstein, of Cohon, Raizes & Regal, of Chicago, and Neal Mermall, of Skokie, for appellees Emery Air Freight, Inc., American National Bank & Trust Company, and Sun Life Assurance Company of Canada.

JUSTICE JIGANTI delivered the opinion of the court:
This case arises out of the construction of a package-handling system for Emery Air Freight, Inc. Through a series of cross-claims, counterclaims, motions and orders, the matter arrives at this stop of its judicial journey as a consolidated appeal from two separate orders of the trial court. The first order involves the notice requirements under the Mechanics' Liens Act. (Ill. Rev. Stat. 1985, ch. 82, par. 1 *et*

*seq.*) The second involves the denial of a motion to compel arbitration.

With regard to the first appeal, Edward Electric, the plaintiff-subcontractor, brought an action under the Mechanics' Liens Act (Ill. Rev. Stat. 1985, ch. 82, par. 1 *et seq.*) against Emery; Anchor Conveyors, which acted as Emery's contractor; Automation, Inc., which was retained by Anchor to perform work on the Emery facility and which also entered into a subcontractual relationship with Edward; American National Bank and Trust, as trustee; and Sun Life Assurance Company of Canada, the mortgagee. The property to which Edward seeks to attach its mechanic's lien was first owned by La Salle National Bank as trustee. La Salle then leased the property to Emery, who was to install the package-handling system on the property.

Several dates are significant for the resolution of this appeal. On June 26, 1984, La Salle conveyed title to American National Bank and Trust Company, as trustee. Also on that date, American National executed a mortgage with Sun Life, which was recorded on June 27, 1984. Within four months after completion of the work by Edward, on January 17, 1985, Edward served notice of claim for mechanic's lien on Automation, Anchor, Emery and La Salle. Also at that time, Edward filed its notice and claim for lien in the office of the recorder of deeds of Cook County. No notice was given to either American National or Sun Life. On July 2, 1985, Edward brought this action to enforce its mechanic's lien. Emery, American National and Sun Life moved to dismiss various counts of Edward's complaint on the grounds that Edward had not given proper notice as required by the Mechanics' Liens Act, and that, therefore, Edward failed to perfect its mechanic's lien against the defendants. The trial court granted the motions of American National and Sun Life and also denied Edward's motion for leave to join La Salle National Bank as a necessary party. Edward now appeals.

■ The Mechanics' Liens Act is in derogation of the common law and therefore its provisions must be strictly construed. (*Water Products Co. of Illinois, Inc. v. Gabel* (1983), 120 Ill. App. 3d 668, 673, 458 N.E.2d 594.) A mechanic's lien is valid only if each statutory requirement of the Act is scrupulously observed. (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 246, 454 N.E.2d 314.) The burden of proving that each requisite has been satisfied is on the party seeking to enforce the lien. 26 Ill. L. & Prac. *Mechanics' Liens* sec. 212, at 427 (1956).

The relevant provisions of the Act to be examined in this case are sections 7, 24, 25 and 28. These sections govern the procedures to be followed by contractors and subcontractors in perfecting liens against

owners of the subject property and other third parties such as incumbrancers and purchasers. To determine whether proper notice was given by Edward, the pivotal question to be resolved is whether American National should be characterized as an "owner of record" under section 24 or as "purchaser" under section 7. Under the statutory scheme of the Mechanics' Liens Act, if American National is deemed to be an "owner of record," then Edward was required to serve notice upon American National. However, if American National is characterized as merely a "purchaser," section 7 of the Act only required that within four months after completion of the work, Edward either bring an action to enforce its lien or file in the office of the recorder of deeds a claim for lien.

The starting point of the analysis begins with section 28, which sets forth the requisites as to perfecting liens by subcontractors. (Ill. Rev. Stat. 1985, ch. 82, par. 28.) This section provides in pertinent part:

> "If any money due to the laborers, materialmen, or subcontractors be not paid within 10 days after his notice is served as provided in sections 5, 24, 25, and 27, then such person may either file a claim for lien or file a complaint and enforce such lien within the same limits as to time and in such other manner as hereinbefore provided for the contractor in section 7 and sections 9 to 20 inclusive, of this Act ***."

Edward argues that under section 28, its lien against American National and Sun Life has been perfected because the requirements of sections 7 and 24 referred to in that provision have been satisfied. Section 24 in essence requires that a subcontractor give notice to the owner of record and lending agency, if known, within 90 days after completion of the work. Edward contends that American National was a "purchaser," rather than "owner of record," and that therefore Edward only needed to file its claim or bring an action against American National within four months after completion of the work. Edward argues that since American National is not the owner of record, it satisfied section 24 by giving notice to La Salle because La Salle was the owner of record.

In support of its analysis and conclusion, Edward propounds two rationales; the first relates to the time at which a mechanic's lien is deemed to attach and the second is based upon the case of *Niles Construction Co. v. La Salle National Bank* (1969), 119 Ill. App. 2d 1, 254 N.E.2d 535.

As to the timing of the lien, Edward's argument that American National was a purchaser, who was not entitled to notice under sec-

tion 24, is predicated on the premise that a mechanic's lien attaches at the time the subcontractor contracts to furnish labor and materials. It is at this point, Edward suggests, that the "owner of record" upon whom notice must be served is determined. As applied to this case, Edward contracted with Automation on April 2, 1984, at which time La Salle owned the property. La Salle then conveyed title to American National on July 26, 1984. Edward served notice on La Salle and others on January 17, 1985. According to Edward's argument, because American National acquired title to the property after the date of contract, section 24 of the Mechanics' Liens Act only required Edward to serve La Salle as the owner of record and not American National and Sun Life, the lending agency.

■ In our reading of the Mechanics' Liens Act, we cannot agree with the underpinnings of Edward's argument. Although Edward correctly points out that the lien attaches at the time of the contract (*First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 245, 454 N.E.2d 314), this does not mean the lien has been perfected at that time. A mechanic's lien is not perfected unless all relevant provisions of the statute have been strictly complied with. (*Steinberg v. Chicago Title & Trust Co.* (1986), 142 Ill. App. 3d 601, 605, 491 N.E.2d 1294.) More importantly, the time at which the lien attaches does not automatically define the status of the parties. There is nothing in the statute to support this argument. On the contrary, the words of the Act and its purpose dictate an opposite conclusion.

■ The purpose of a mechanic's lien is to give contractors a legal hold on the owner's property as security for a debt. (*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 678, 456 N.E.2d 889.) Obviously, it is the existing owner at the time the lien claim is filed and at the time notice must be given who would be directly affected by an encumbrance on the property and who would need an opportunity to protect his or her property interest. We cannot agree with the implication of Edward's argument that a prior owner has a greater interest in the subject property than the current owner.

■ As for the wording of section 24, we note that in a prior version of section 24, now repealed, the Act merely required notice to "an owner." (Ill. Rev. Stat. 1923, ch. 82, par. 24.) After amendment, the provision required that notice be given to the "owner of record." (Ill. Rev. Stat. 1969, ch. 82, par. 24.) It is an elementary proposition of statutory construction that the legislature intended to give meaning and effect to each word as used in the provisions. (2A A. Sutherland, Statutory Construction sec. 46.06, at 104 (4th ed. 1984).) In our

opinion, the legislative addition of "of record" must be read to mean the owner of the property existing, not at the time of contracting, but rather at the time the contractor is required to serve notice. This conclusion is based upon the analysis set forth above, that the current property owner must be able to protect his or her property interests.

Edward's additional support for the argument that American National should be considered a "purchaser" rather than an owner is based upon the decision of *Niles Construction Co. v. La Salle National Bank* (1969), 119 Ill. App. 2d 1, 254 N.E.2d 535. *Niles Construction* held that the party was a purchaser. However, in *Niles Construction* the parties purchased the property after the mechanic's lien had already been filed. The important fact present here, which distinguishes this case from *Niles*, is that Edward filed his lien after American National recorded the deed in the office of the recorder of deeds.

■ This brings us to a related issue regarding the notice provisions of the Mechanics' Liens Act. Edward argues that even assuming American National was an owner of record, Edward's failure to send notice to American National and Sun Life was not fatal to perfecting its lien. Edward relies upon section 25, which provides in pertinent part:

> "In all cases where the owner, agent, architect or superintendent cannot, upon reasonable diligence, be found in the county in which said improvement is made, or shall not reside therein, the sub-contractor or person furnishing materials, fixtures, apparatus, machinery, labor or services may give notice by filing in the office of the recorder against the person making the contract and the owner a claim for lien ***." (Ill. Rev. Stat. 1985, ch. 82, par. 25.)

Edward argues that it conducted a diligent search for the record owner of the subject property by searching the abstract books at the office of the Cook County recorder of deeds on January 17, 1985. At that time, the abstract books did not disclose the interest of American National. Edward did not, however, search the grantor-grantee index in the recorder's office. It is well established that parties are "chargeable with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder." (*Landis v. Miles Homes Inc.* (1971), 1 Ill. App. 3d 331, 335, 273 N.E.2d 153; Ill. Rev. Stat. 1985, ch. 115, par. 12.) The tract index is a record kept merely for convenience. (*Landis v. Miles Homes Inc.* (1971), 1 Ill. App. 3d 331, 335, 273 N.E.2d 153.) Accordingly, Edward cannot be considered to have exercised reasonable diligence as required by section 25.

Thus, to reiterate, section 24 requires notice to the owner of record and lender, if known. At the time that Edward attempted to perfect its lien in January of 1985, American National was the owner of record and Sun Life was the lender, who could have been ascertained if a search of the public records had been properly conducted. Because neither one of these parties had been served properly under the Act, Edward did not perfect its lien against them. Accordingly, the trial court did not err in granting the motions of American National and Sun Life.

Regarding Edward's argument that the trial court erred in failing to allow an amendment to the complaint to add La Salle National Bank as a necessary party, in light of our decision that the "owner of record" referred to in the Mechanics' Liens Act implies the owner who existed at the time a party was required to serve notice, it follows that La Salle no longer had an interest in the property after selling it to American National. Accordingly, the trial court did not err in denying Edward's motion.

■ The second appeal in this case is taken from the denial of a motion to compel arbitration filed by Anchor, Emery's contractor. Anchor filed the motion in response to a counterclaim brought by Emery against Anchor. The issue before this court is whether the contract between Anchor and Emery requires that disputes be resolved through arbitration.

Anchor argues on appeal that the contract between Anchor and Emery incorporated by reference the general conditions of the American Institute of Architects (AIA), which provide for arbitration as the remedy for any and all claims arising out of or concerning the contract between the parties. Conversely, Emery contends that the parties never specifically agreed that the AIA conditions would be part of their contract. In reviewing the documents contained in the record, it is apparent that the counterclaim filed by Emery includes an exhibit containing a document entitled "Standard Conditions of Contract." On that document the first provision provides:

"Unless otherwise modified by these 'Standard Conditions of Contract,' the General Conditions of American Institute of Architects, latest edition, will govern the work and are made part of this contract. In this respect, Emery Worldwide will be considered to be vested with any and all powers reserved for the architect under the A.I.A. General Conditions as Emery may, in its sole right, wish to assume."

Although this exhibit attached to Emery's counterclaim did not additionally attach the AIA conditions, these AIA conditions were at-

tached in a document subsequently filed by Anchor.

Article 7.9 of the AIA General Conditions provides in pertinent part:

> "All claims, disputes and other matters and questions between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof *** shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

We believe that in light of the fact that the document attached in Emery's exhibit specifically states that the contract includes the AIA conditions, and because the dispute between Emery and Anchor arises out of the contract documents or breach thereof, the dispute between Anchor and Emery is subject to arbitration in accordance with the provisions of article 7.9.

■ Emery argues, however, that even assuming article 7.9 applies to the dispute between the parties, that section also serves to prevent arbitration between Emery and Anchor. Specifically, article 7.9 also provides that no arbitration arising out of the contract documents shall include the "architect." Emery reasons that because paragraph 1 of the Standard Conditions of Contract vests Emery with any and all "powers" reserved for the architect, that this provision implies that Emery should be characterized and treated as an architect for purposes of the arbitration exclusion in article 7.9. We disagree. Rather, as set forth in the definition section of the contract attached to Emery's counterclaim, Emery was primarily the owner. Only secondarily was Emery granted the powers of an architect. Emery should not be allowed to shield itself from resolving its claims through arbitration merely because it could, at its own discretion, exercise powers given to the architect.

■ Emery further claims that even assuming the dispute with Anchor is subject to arbitration, Anchor has waived this right. Specifically, Emery argues that Anchor waived its right to arbitration by filing a counterclaim against Emery and Automation, filing a lawsuit in the Federal district court in Connecticut and by filing a first amended counterclaim against Emery.

In view of the fact that arbitration is an efficient method of dispute resolution, waiver of the right to arbitrate is not lightly inferred. (*Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 1042, 425 N.E.2d 439.) In our view of the facts, we believe that Anchor's participation in the litigation was merely responsive. The pleadings filed by Anchor were all in order to protect its rights from litigation stemming from Edward's original and first-amended complaints. Specifically, the first

counterclaim filed by Anchor against Emery was in response to Edward's compliant. This counterclaim was then voluntarily dismissed by Anchor and only subsequently refiled in response to the counterclaim filed by Emery against Anchor. Anchor did not initiate the litigation. The filing of a counterclaim and answer does not automatically result in waiver of arbitration rights. (*Kessler, Merci, and Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 428 N.E.2d 608.) More important, we do not believe Anchor's conduct has been inconsistent with the arbitration clause. (*Godare v. Sterling Steel Casting Co.* (1981), 96 Ill. App. 3d 601, 421 N.E.2d 925.) Additionally, we note that Anchor has not initiated discovery against Emery and therefore has not unnecessarily required Emery to expend costs in this litigation. Accordingly, because we believe the filing of pleadings by Anchor was merely to protect its rights, Anchor has not waived its right to arbitration.

For the foregoing reasons, the order of the trial court dismissing Edward's lien claim against American National and Sun Life is affirmed. The order denying Anchor's motion to compel arbitration is reversed and remanded.

In its brief Anchor makes a motion requesting that a stay of proceeding pending arbitration be entered. (Ill. Rev. Stat. 1985, ch. 10, par. 102.) That motion is allowed.

Affirmed in part; reversed in part and remanded.

JOHNSON and LINN, JJ., concur.