A & A ACOUSTICS, INC., Plaintiff, v. MARK S. VALINSKY *et al.,* Defendants-Appellees (Adler and Adler, Appellant; Chicago Title and Trust Company *et al.,* Defendants).

First District (1st Division)   No. 1—88—2169

Opinion filed September 4, 1990.

Adler & Adler, of Chicago (Charles E. Adler, of counsel), for appellant.

Frederick A. Lurie, of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Appellant, Adler & Adler (Adler), a law firm, appeals from orders entered by the trial court assessing attorney fees and costs against Adler as sanctions pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The sole issue before this court is whether the trial court properly imposed section 2—611 sanctions. For the following reasons, the judgment of the trial court is affirmed and the cause is remanded for further proceedings consistent with this opinion.

The record indicates that on December 24, 1985, Adler filed a complaint for foreclosure of a mechanics' lien on behalf of A & A Acoustics, Inc. (A & A), against defendants Dr. Mark Valinsky; Aaron Podiatry Associates, P.C. (Aaron Podiatry); Capitol Bank and Trust Co. of Chicago (Capitol), as trustee; E.P. Hale Lumber, Inc.; John Mandel, d/b/a Glacier Title; Ceren Plumbing & Heating Co.; Richard Shorba, d/b/a Shorba Construction Co.; R.G.C. Construction Corp. (R.G.C.); and unknown owners and unknown lienholders. This appeal relates only to defendants Valinsky, Aaron Podiatry and Capitol.[1] The two-count foreclosure complaint alleged, *inter alia,* that on or about February 12, 1985, Valinsky and Aaron Podiatry were authorized by Capitol to enter into a contract with A & A for the purchase and installation of acoustical ceiling and drywall soffets at the podiatry offices; that the work was completed on April 13, 1985; and that the sum of $1,859 remained due and owing. Count I of the complaint sought foreclosure of a mechanics' lien, and count II sought damages under the theory of *quantum meruit.*

In response, Capitol moved to dismiss on the ground that count I failed to allege that any named defendant had entered into a contract with A & A and count II set forth only conclusory allegations. Thereafter, Adler amended A & A's complaint to include the language, "and did in fact enter into said contract." Capitol then withdrew its motion

---

[1] Dr. Mark Valinsky is the president of Aaron Podiatry Associates, Inc., located at 159-169 Oak Park Avenue, Oak Park; and Capitol Bank and Trust Company of Chicago holds title to the property as land trustee.

to strike and leave was granted for Capitol to file its answer.

In their answer filed on April 16, 1986, Valinsky, Aaron Podiatry and Capitol (collectively, defendants) raised the affirmative defense that on or about November 15, 1984, Valinsky had entered into a construction contract with R.G.C., as general contractor, for remodeling of the podiatry offices. Defendants further alleged that A & A's relationship to the construction contract was subcontractor or sub subcontractor, and A & A, as a subcontractor, had failed to timely serve the statutorily required 90-day notice of lien. Defendants then moved for summary judgment on the grounds that: (1) A & A, as subcontractor, had failed to serve a 90-day notice of lien on defendants; (2) defendants never had entered into a contract with A & A; and (3) R.G.C.'s affidavit had not contained A & A's name or the amount A & A would be paid. Defendants attached a copy of their construction contract with R.G.C. and Valinsky's affidavit to the motion. The affidavit stated that: Valinsky, as president of Aaron Podiatry, contracted with R.G.C., as general contractor, to remodel the podiatry offices; neither Valinsky, Aaron Podiatry, nor Capitol had entered into a written or oral contract with A & A; no work was performed on the offices after March 27, 1985; and A & A did not serve notice of its lien on defendants within 90 days of completing its work.

In reply, A & A alleged that its status as a subcontractor or contractor is a factual matter which must be decided by a trier of fact. A & A further alleged that on or about February 12, 1985, A & A had met with Valinsky and they had entered into an agreement for A & A to do the work. In addition, Valinsky had paid A & A $2,600 partial payment. A & A attached the affidavit of Burton Ames, a principal of A & A, to its reply. In the affidavit, Ames stated that he had met with Valinsky on February 12, 1985, to discuss the improvements and had reached an agreement, and Valinsky had been at the jobsite almost daily and had directed and accepted A & A's work. As a result, the trial court denied defendants' motion for summary judgment.

Thereafter, on September 18, 1987, following A & A's case in chief, the trial court granted defendants' motion for a directed verdict on the grounds that: (1) A & A had failed to establish that it was a contractor with any of defendants; and (2) A & A had failed to establish that it was in privity with any of defendants. On that same date, A & A moved orally for leave to file an amended complaint. The trial court granted A & A leave to file a written motion for the request within 30 days. There is no indication in the record that this motion was ever filed.

On October 16, 1987, defendants moved for imposition of sanc-

tions on A & A and Adler pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), on the ground that "plaintiff's complaint contained untrue allegations that plaintiff and its counsel knew were not well-grounded in fact or warranted by existing law."

In response, A & A argued that defendants improperly sought sanctions for a situation where A & A had merely sought the wrong remedy. A & A stated that the trial court had found that there was sufficient evidence to proceed with an action as a subcontractor.[2] Further, A & A argued that it had investigated the case and had interviewed Robert Cimo of R.G.C., the general contractor, several times. Each time, Cimo had stated that A & A worked directly with defendants as a general contractor and was not a subcontractor of R.G.C. In addition, A & A alleged that it had established in court that defendants had paid A & A directly[3] and that the affidavit filed by R.G.C. had not listed A & A as a subcontractor. Also, at the summary judgment hearing, defendants failed to produce any documents to establish that A & A was a subcontractor. As a result, A & A and Adler pursued the cause of action with a reasonable belief that A & A was a general contractor.

On December 28, 1987, following a hearing on defendants' section 2—611 motion, the trial court granted defendants' motion and awarded defendants $2,364.60 in attorney fees and $31 in costs. As the basis for its ruling, the trial court stated in its order:

"This court finds that the sworn allegations made by, and on behalf of, the plaintiff in the three pleadings aforementioned were made without reasonable cause and found to be untrue. The plaintiff abused its right to free access to the courts by pleading untrue statements of fact which it knew or reasonably should have known were untrue. One of the purposes of [section 2—611] is to prevent litigants from being harassed by actions brought against them which by their nature are vexatious, based upon false statements or brought without legal foundation. There would have been no trial but for plaintiff's untrue pleadings. The allegations made in the pleadings were not minor misstatements, but were without factual foundation."

The following day, December 29, 1987, Adler filed a motion, on its

---

[2]The order, dated September 18, 1987, does not include this finding, and the transcript of the trial is not included in the record.

[3]The record contains no exhibit or record of proceeding to verify this statement.

own behalf, to vacate the December 28, 1987, order. Defendants moved to strike the motion to vacate on the ground that it merely reiterated the arguments set forth at the section 2—611 hearing and failed to supply any grounds for relief. Adler was then granted leave to file an amended motion to vacate, which it did on February 2, 1988. In the interim, Adler filed a separate motion to vacate on behalf of A & A. Approximately two months later, Adler moved to withdraw as counsel for A & A, citing potential conflict in the resolution of the section 2—611 issue. The trial court granted the motion, and on May 3, 1988, Burton Ames, principal of A & A, filed his appearance as *pro se* counsel. Subsequently, on June 15, 1988, following a hearing, the trial court denied A & A's and Adler's motions to vacate and granted leave to defendants to file an affidavit of additional time spent and fees charged in connection with resolving the motions to vacate. On July 13, 1988, the trial court awarded defendants additional fees of $1,331.20, assessed against A & A and Adler. Adler appealed from the orders entered on December 28, 1987, June 14, 1988, and July 13, 1988. A & A is not a party to this appeal.

As previously stated, the sole issue before this court is whether the trial court properly imposed section 2—611 sanctions on Adler, A & A's attorney, when no facts were present to support a contractual relationship between A & A and defendants. Initially, Adler attempts to minimize the groundless nature of his foreclosure complaint by stating that he had simply sought an improper remedy and should have proceeded under a subcontractor theory rather than a contractor theory. Adler supports this inadvertent error argument by claiming that the trial court found that he had a sufficient basis for a claim based on a subcontractor theory.

■■ ■ Adler's argument that he merely sought an improper remedy and should not be penalized fails for two reasons. First, the December 28, 1987, order contains no finding as to the sufficiency of the claim under a subcontractor theory, and the record does not contain a transcript of the December 28, 1987, proceedings to verify this allegation. Second, a reasonable investigation would have revealed that a suit brought under a subcontractor theory would have been dismissed for failure to have timely filed a notice of claim pursuant to section 24 of "An Act relating to contractors' and material men's liens, known as mechanics' liens." (Ill. Rev. Stat. 1987, ch. 82, par. 24.) Section 24 requires that the subcontractor file written notice of his or her mechanics' lien claim within 90 days after the work has been completed. A & A's claim for lien, filed August 12, 1985, expressly states that A & A had completed its work for defendants on April 13, 1985. Thus,

the notice was filed beyond the 90-day period. Timely notice of a mechanics' lien is a condition precedent to an action to foreclose a lien, without which a subcontractor cannot recover. (*Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142, 255 N.E.2d 615.) Accordingly, a foreclosure claim brought as a subcontractor was not a viable alternative cause of action.

■ Section 2—611 requires that an attorney sign every pleading, motion and other paper filed with the court, certifying "that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) If a reasonable inquiry into the facts to support the pleading has not been made to ensure that facts are well grounded, the party, the party's attorney, or both are subject to an appropriate sanction, including payment of the other party's attorney fees and costs. Ill. Rev. Stat. 1987, ch. 110, par. 2—611; *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595.

■ The purpose behind section 2—611 is to prevent counsel from making unsupported assertions of fact or law (*In re Custody of Caruso* (1989), 185 Ill. App. 3d 739, 542 N.E.2d 375) and to prevent a litigant from abusing the judicial process (*Beno v. McNew* (1989), 186 Ill. App. 3d 359, 542 N.E.2d 533). Section 2—611 imposes upon both client and counsel the duty to make a reasonable inquiry into the facts to support a legal claim before pleadings are filed, not after they are filed. (*Chicago Title & Trust Co. v. Anderson,* 177 Ill. App. 3d 615, 532 N.E.2d 595.) Whether an inquiry is reasonable depends upon the circumstances existing at the time the pleading was filed. As a general rule, however, an attorney cannot rely solely on his client's verbal representations when additional information is available from his client or from third parties. (*In re Custody of Caruso,* 185 Ill. App. 3d 739, 542 N.E.2d 375.) Further, the attorney has an obligation to objectively review all information and if any discrepancies, inconsistencies or gaps appear, he must investigate further before filing. (*Chicago Title & Trust Co. v. Anderson,* 177 Ill. App. 3d 615, 532 N.E.2d 595.) This duty to investigate does not stop at the filing stage. An attorney has a continuing professional duty to promptly dismiss a baseless lawsuit, even over his client's objections, when he learns he no longer has grounds for a case. (*In re Custody of Caruso,* 185 Ill. App.

3d 739, 542 N.E.2d 375.) Upon review, the trial court's decision assessing attorney fees is entitled to great weight and will not be disturbed absent a showing of abuse of discretion. *Beno v. McNew,* 186 Ill. App. 3d 359, 542 N.E.2d 533.

■ In the present case, pursuant to Adler's affidavit, his "extensive investigation" prior to filing consisted solely of an interview with Burton Ames, principal of A & A, during which Ames allegedly told Adler that A & A had a direct contract with defendants. As previously stated, a client's assurance that facts exist does not satisfy the section 2—611 requirement to reasonably investigate a claim before filing. (*In re Custody of Caruso,* 185 Ill. App. 3d 739, 542 N.E.2d 375; *Chicago Title & Trust Co. v. Anderson,* 177 Ill. App. 3d 615, 532 N.E.2d 595.) After the complaint was filed, Adler allegedly met with Robert Cimo, principal of R.G.C. According to Adler's affidavit, Cimo told him that A & A was the general contractor for all the acoustical ceiling work. Adler claims that R.G.C.'s section 5 affidavit (Ill. Rev. Stat. 1987, ch. 82, par. 5), attached to defendants' motion for summary judgment, supports his claim that A & A was a general contractor. However, contrary to Adler's position, R.G.C.'s affidavit does not support this claim. The section 5 affidavit, filed before the contracting work began, merely listed the various subcontractors with whom R.G.C. intended to contract for various phases of the work at the podiatry offices. The affidavit states that Carrano was to do the acoustical ceiling work, as a subcontractor. Apparently, A & A was substituted for Carrano because A & A actually did the acoustical ceiling work. At the very least, the affidavit, available at the time the complaint was filed, revealed an inconsistency or discrepancy in the facts which Adler was under a duty to reasonably investigate. (*Chicago Title & Trust Co. v. Anderson,* 177 Ill. App. 3d 615, 532 N.E.2d 595.) The fact that Adler was unaware of the affidavit until it was attached to defendants' motion for summary judgment is indicative of Adler's inadequate investigation before filing. Even after the information became known at the summary judgment stage, Adler still failed to further investigate. *In re Custody of Caruso,* 185 Ill. App. 3d 739, 542 N.E.2d 375.

■ Adler contends that defendants' section 2—611 petition was deficient because it is void of any allegation that Adler had any knowledge that A & A was not a general contractor and failed to set forth that Adler's inquiry and investigation was deficient. Contrary to Adler's position, a petition for section 2—611 sanctions is required to only identify the statements falsely made and the fees that resulted from the false statements. (*Beno v. McNew,* 186 Ill. App. 3d 359, 542

N.E.2d 533.) In its section 2—611 petition, defendants specifically alleged that Adler's allegation that A & A had entered into a direct contract with defendants was false. In addition, defendants attached a comprehensive account of the fees that resulted from the false statements. There is no requirement that defendants state in their section 2—611 petition that Adler had failed to reasonably investigate. Moreover, such a statement would be an inappropriate conclusion of law. Instead, defendants alleged the necessary facts to support a legal conclusion by the trial court that Adler had failed to reasonably investigate.

Adler further argues that the trial court had failed to investigate what facts were known to Adler at the time documents were filed or at the time of trial. Adler clearly has the delegation of the duty to investigate confused. It is Adler's duty, not the trial court's, to reasonably investigate. Further, the standard is known or reasonably should have known. (*Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 515 N.E.2d 146.) Therefore, what Adler actually knew is not dispositive.

■ Next, Adler argues that there was no written documentation available during discovery that would dispute the allegation that A & A was a general contractor. Once again, Adler is confused about its duty to reasonably investigate pursuant to section 2—611. The duty arises before filing. The record contains two documents which were clearly available before filing and which either expressly dispute the allegation that A & A was a general contractor or raise an inconsistency or discrepancy which should have triggered further investigation by Adler before filing. First, A & A's quotation for the acoustical ceiling work, dated January 26, 1985, addressed to R.G.C. and containing a signature line for R.G.C.'s acceptance of A & A's quotation expressly disputes the allegation that A & A was a general contractor. As a general contractor, A & A would not have required R.G.C.'s acceptance; it would have required defendants' acceptance. In addition, R.G.C.'s section 5 affidavit, which itemized the intended subcontractors, would have raised an inconsistency or discrepancy. In light of the fact that A & A was Adler's client, it is reasonable to assume that, with reasonable investigation, Adler would at least have discovered A & A's quotation before filing the foreclosure complaint.

In addition, Adler appears to put great weight on the fact that defendants allegedly made partial payment directly to A & A. Adler claims that this direct payment indicates that there was a contract between A & A and defendants. However, pursuant to the contract between R.G.C. and defendants, defendants had the option of making payments directly to any subcontractors. Finally, Adler's limited reli-

ance on case law in its brief is unpersuasive for the basic reason that every case cited predates the amended version of section 2—611, which significantly changed the grounds for imposition of sanctions.

Accordingly, after reviewing the record and relevant case law, we conclude that the trial court properly imposed section 2—611 sanctions on Adler. With respect to additional attorney fees and costs incurred in connection with this appeal, the cause is remanded to the trial court for such appropriate relief as may be necessary. See *Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 515 N.E.2d 146.

Affirmed and remanded for further proceedings consistent with this opinion.

Affirmed and remanded.

O'CONNOR and MANNING, JJ., concur.