**John R. STOEBNER, Chapter 7 Trustee for Chasco Corporation, Debtor, Plaintiff,**

v.

**HORIZON FABRICATORS, INC. and Klemp Corporation, Defendants.**

Civ. No. 4–92–58.

United States District Court, D. Minnesota, Fourth Division.

April 23, 1993.

Howard A. Patrick and Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for plaintiff.

Derck Amerman, Minneapolis, MN, for defendant Horizon Fabricators, Inc.

Herbert B. Conner, Bernhard Schaffler and Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, and William J. Fisher, and Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for defendant Klemp Corp.

## ORDER

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. Based on a review of the file, record and proceedings herein, the court denies the motions for summary judgment.

## BACKGROUND

Plaintiff John R. Stoebner (the "trustee"), the Chapter 7 trustee for Chasco Corporation ("Chasco"), brings the present action to obtain payment from defendant Horizon Fabricators, Inc. ("Horizon") and defendant Klemp Corporation. The dispute between the parties arises from the construction of a food distribution facility owned by Kehe Food Distributors, Inc. ("Kehe") and located in Romeoville, Illinois. MD Con, Inc. acted as the general contractor for the project. Horizon contracted with the steel fabrication subcontractor of the project, Antonic Rigging & Erecting, Inc. ("Antonic") to provide, among other things, steel grating for the facility. Horizon ordered the grating from Chasco, which charged Horizon $566,928.40. Chas-co in turn ordered the grating from Klemp, and Klemp charged Chasco $560,384.60. By February 19, 1990, Klemp had manufactured and delivered all of the grating, which was installed and became a permanent part of the project.

Horizon subsequently paid Chasco $127,004.08 for the grating and Chasco paid Klemp $120,618.40. Horizon obtained lien waivers from Chasco and Klemp for those amounts. In a letter dated March 7, 1990, Horizon acknowledged that Chasco was still owed $439,924.32 ("the Horizon receivable") and that there was still due and owing to Klemp the amount of $439,766.22.

On April 25, 1990, an involuntary Chapter 7 bankruptcy petition was filed against Chasco in the United States Bankruptcy Court for the District of Minnesota. *See In re Chasco Corporation*, Bky. 4–90–2291 (D.Minn.). It is undisputed that Klemp received notice of Chasco's bankruptcy and Horizon did not.[1]

After the Chasco bankruptcy was filed, on May 15, 1990, Chasco sent Kehe notification of its claim and intent to file a mechanics' lien. It is undisputed that Chasco failed to notify Kehe's lender. On May 17, 1990, Chasco's mechanics' lien was recorded in Will County. As a result of those actions, the trustee contends that Chasco has a perfected mechanics' lien.

Klemp also contends that it has a perfected mechanics' lien. On April 4, 1990, Klemp notified Kehe of its mechanics' lien. On April 19, 1990, Klemp filed notice of its lien with Will County but failed to file an affidavit with that notice. On June 11, 1990, Klemp filed a lawsuit naming Chasco as one of the defendants. It is undisputed, however, that Klemp did not serve Chasco with notice of the lawsuit. Klemp further argues that a lawsuit filed by Antonic on August 16, 1990, which named both Klemp and Chasco as defendants, provided Chasco with notice of Klemp's mechanics' lien.

---

1. Klemp received notice of Chasco's bankruptcy filing by service of the motion in the Chasco bankruptcy on May 11, 1990, and subsequently received official notice of filing from the bank-ruptcy court. Because Horizon was not scheduled on the Chasco matrix, Horizon received no notice from the bankruptcy court.

On March 6, 1991, Antonic filed bankruptcy.[2] On March 26, 1991, Kehe reached a settlement with Klemp in which Kehe agreed to pay Klemp $439,766.20 in return for Klemp's release of its mechanics' lien claim. Klemp's release stated that it had been employed by Chasco rather than Horizon. As another condition of payment, Klemp signed an agreement to hold Kehe harmless from any claims that might be brought by Chasco or its bankruptcy trustee.

Antonic claimed a mechanics' lien on the project, which included the $439,766.20 that Kehe sought to pay Klemp. Kehe refused to pay Klemp until Antonic agreed to release its lien, and Klemp paid Antonic $40,000 in return for Antonic's release. On March 22, 1991, an order approving Antonic's release was entered in its bankruptcy case.

Horizon also had a mechanics' lien on the property, and before paying Klemp, Kehe required that Horizon provide a contractor's affidavit and a partial waiver of its lien in the amount of $439,766.20.[3] Kehe prepared the contractor's affidavit for Horizon's signature, but the affidavit failed to mention Chasco or Chasco's lien, identifying Klemp as the sole remaining claimant. The affidavit further indicated that Klemp had been employed directly by Horizon. On May 30, 1991, Horizon signed and mailed the contractor's affidavit and partial waiver of lien to Kehe's counsel.

After Kehe paid the settlement amount to Klemp, the trustee sent a letter to Horizon demanding payment of the Horizon receivable. In response, Horizon tendered a check for $158.52, which Horizon contends is the balance owed to Chasco after Kehe's payment to Klemp. The trustee asserts breach of contract and turnover claims, seeking either payment of the Horizon receivable or recovery of the money

that Kehe paid Klemp. The trustee contends that as of the date of Chasco's bankruptcy, Horizon owed Chasco $439,924.32 and Chasco owed Klemp $439,766.22. The trustee argues that the amounts are undisputed and all of the contracts have been fully performed, and thus seeks payment for the benefit of Chasco's creditors.[4]

The trustee moves for summary judgment against Klemp, contending that under Illinois law, Chasco has a perfected mechanics' lien and Klemp failed to properly perfect its mechanics' lien as against Chasco. The trustee thus argues that it may avoid Klemp's lien and recover Kehe's settlement payment to Klemp.

The trustee also moves for summary judgment against Horizon, arguing that Horizon never paid Chasco the Horizon receivable, that the trustee has not released Horizon from its obligation and thus the obligation still exists. The trustee contends that the Horizon receivable constitutes property of Chasco's bankruptcy estate and that Horizon has no defenses under the Bankruptcy Code. The trustee further argues that because Horizon participated in a scheme to violate Chasco's rights as a subcontractor with a perfected mechanics' lien, Horizon is not entitled to set off the amount that Kehe paid to Klemp against the amount that Horizon owes to Chasco. The trustee thus seeks payment of the full amount of the receivable, $439,924.32, from Horizon.

Horizon makes a cross-motion for summary judgment on the trustee's turnover claim. Horizon contends that the Horizon receivable does not constitute property of the bankruptcy estate because it merely represents a right to receive payment that in turn must be paid to another subcontractor. Even if the court were to conclude that the Horizon receivable was property of the estate, Horizon contends that it is re-

---

**2.** *In re Antonic Rigging & Erecting of Minnesota, Inc.,* Bky. 3-91-1244.

**3.** Horizon filed its mechanics' lien for $555,490 with the Will County Recorder on June 5, 1990. The record reflects no other information concerning the filing, notice or perfection of Horizon's lien.

As a result of the settlement approved in the Antonic bankruptcy, Horizon released its mechanics' lien to the extent of $439,766.20.

**4.** The claims of Chasco's creditors exceed $1.7 million, including Klemp's alleged unsecured claim.

lieved from any liability because it had no knowledge or notice of Chasco's bankruptcy when it released its mechanics' lien, and thus the release was made in good faith. Horizon also argues that it has no turnover liability because the transfer resulted from an independent duty owed to Klemp as the ultimate materialman. Horizon further contends that it never had possession or control of the cash payment, which passed directly from Kehe to Klemp, and thus the transfer falls outside of the turnover provision of the bankruptcy code. Even if Kehe had paid Horizon directly, it argues that it was merely a conduit required to pass the payment down to Klemp, and thus Klemp was entitled to direct payment of the funds. Horizon finally argues that because of Chasco's role as a conduit, its property interest in the funds is at most bare legal title, and such interest is of inconsequential value or benefit to Chasco's bankruptcy estate.

The trustee also asserts a breach of contract claim as an alternative to the turnover claim. Horizon moves for summary judgment on that claim, arguing that the trustee is unable to prove damages because Chasco has received the benefit of its bargain. Moreover, Horizon argues that trustee may not bootstrap its contract claims into a turnover action under the bankruptcy code.

Klemp also moves for summary judgment on the trustee's claims against it, contending that Chasco failed to properly perfect its mechanics' lien, and thus has no claim to the funds at issue. Klemp claims that it perfected its mechanics' lien before Chasco, and thus Kehe properly paid $439,-766.20 directly to Klemp. Klemp further argues that the payment is not property of Chasco's bankruptcy estate and asks the court to impose a constructive trust because Chasco holds only bare legal title to the funds, while Klemp holds equitable title.

Klemp also seeks summary judgment on Horizon's cross-claim for indemnity and contribution, arguing that Klemp is not liable to Chasco, and thus Horizon is not entitled to indemnity and contribution.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With that standard at hand, the court will consider the motions for summary judgment.

The trustee contends that Chasco had a properly perfected mechanics' lien, and

that its right to payment pursuant to that lien is property of Chasco's bankruptcy estate. Section 541 of the bankruptcy code provides that the bankruptcy estate:

is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1). Under that section, any rights that Chasco might have as a mechanics' lienor become property of the estate "which the trustee may assign and sell the same as any other asset of the estate." 4 *Collier on Bankruptcy*, ¶ 541.-07, at 541–33 (Lawrence P. King ed., 15th ed. 1992) (footnote omitted).

The trustee further contends that Klemp did not have a properly perfected mechanics' lien, and that as a result, Klemp improperly obtained possession of a portion of Chasco's bankruptcy estate, that is, the payment that Kehe made to Klemp. The trustee therefore asserts a turnover action against Klemp under § 542(a) of the Bankruptcy Code. Section 542(a) provides in relevant part that:

an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell or lease ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Klemp contends, however that its lien was properly perfected, and Chasco's lien was unperfected, and thus Chasco's lien is junior to Klemp's. Federal bankruptcy courts are to "look to state law in determining what is the debtor's interest in ... property." 1 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* § 2–8, at 41 (1992) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Moreover, "the [bankruptcy] estate ... acquires no better right than the debtor.... If the debtor's lien is junior, such will be the limit of the interest in the property included in the estate." 4 *Collier on Bankruptcy*, ¶ 541.07, at 541–34 (Lawrence P. King ed., 15th ed. 1992) (footnote omitted).

■ The court must thus look to state law to resolve the question of whether the mechanics' liens were properly perfected. *See, e.g., In re Gateway Ctr. Bldg. Investors, Ltd.*, 95 B.R. 647, 649 (Bankr.E.D.Mo. 1989) (citing *Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1084 (8th Cir.1988), *citing Butner*, 440 U.S. at 54–55, 99 S.Ct. at 917–18). It is undisputed that Illinois law controls the mechanics' liens at issue. The court will thus apply Illinois law to analyze the parties' claims concerning their respective liens.

Under Illinois law:

Mechanics' liens are in derogation of the common law and, therefore, the statute creating them is to be strictly construed.... 'A party seeking to enforce such a lien must bring himself strictly within the terms of the statute.'

*Roth v. Lehman*, 1 Ill.App.2d 94, 116 N.E.2d 413, 414–15 (1953) (quotation and citations omitted). Under Illinois mechanics' lien law, a subcontractor is required to provide notice to an owner, and its lender, if known, within 90 days after completion of the furnishing of labor or materials. Mechanics' Lien Act, Ill.Rev.Stat. ch. 82, para. 24 (1991) ("section 24").[5] Turning to

---

**5.** Section 24 specifically requires that:

Sub-contractors, or a party furnishing labor or materials, may at any time after making his or her contract with the contractor, and shall within 90 days after the completion thereof, or, if extra or additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work or final delivery of such extra or additional material, cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressee only, to or personally served on the owner of record ... and to the lending agency, if known.... For purposes of this Section, notice by registered or certified mail is considered served at the time of its mailing.

the validity of Klemp's mechanics' lien, it is undisputed that on April 24, 1990, Klemp sent valid notice to Kehe pursuant to section 24.

The Illinois Mechanics' Lien Act further provides that a subcontractor may perfect its lien against third parties in one of two ways:

> If any money due to the laborers, materialmen, or sub-contractors be not paid within 10 days after his notice is served as provided in sections 5, 24, 25, and 27, then such person may either file a claim for lien or file a complaint and enforce such lien within the same limits as to time and in such other manner as hereinbefore provided for the contractor in section 7 and sections 9 to 20 inclusive, of this Act....

Ill.Rev.Stat. ch. 82, para. 28 (1991) ("section 28"). Section 7 of the Act sets forth the time period for such perfection:

> No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within 4 months after the completion ... he or she shall either bring an action to enforce his or her lien therefor or shall file in the office of the recorder of the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by the affidavit of himself or herself....

*Id.* para. 7 ("section 7"). Klemp first sought to perfect its mechanics' lien by filing notice of the lien in Will County. It is undisputed, however, that Klemp failed to verify its claim by affidavit. The court thus concludes that the filing was insufficient to perfect Klemp's lien. *See, e.g., Orr & Lockett Hardware Co. v. Russell,* 169 Ill. 100, 48 N.E. 444, 445 (1897) (under Illinois law, verification by affidavit is required to properly perfect a mechanics' lien

by filing); *McDonald v. Rosengarten,* 134 Ill. 126, 25 N.E. 429, 429 (1890).

Sections 7 and 28 further provide that a subcontractor may perfect its rights under the lien act by initiating a lawsuit to enforce such rights within four months after final delivery of materials. In the present case, Klemp was required to file such a lawsuit on or before June 19, 1990. Klemp argues that it fully met that requirement on June 11, 1990, when it commenced an action in Will County against various defendants, including Chasco, to enforce its mechanics' lien.[6] It is undisputed, however, that Klemp never served either Chasco or the trustee. Klemp nevertheless contends that its enforcement action perfected its lien because under Illinois law, the filing of a complaint commences a lawsuit for statute of limitations purposes. The court rejects Klemp's contention. The critical issue is not whether Klemp commenced a lawsuit for purposes of the statute of limitations, but rather whether Chasco received notice of that lawsuit sufficient to fulfill the requirements of sections 7 and 28, that is, to provide third parties "with notice of the existence, nature, and character of a lien." *Lyons Federal Trust & Savings Bank v. Moline Nat'l Bank,* 193 Ill.App.3d 108, 140 Ill.Dec. 282, 549 N.E.2d 933, 939 (1990). It is undisputed that Klemp failed to serve either Chasco or the trustee, and Klemp fails to proffer any other evidence that Chasco had knowledge of the enforcement action. The court thus concludes that Klemp's mere filing of its enforcement action was insufficient to fulfill the requirements of sections 7 and 28.

Klemp contends, however, that its failure to serve Chasco must be excused because it was unable to effect such service as a result of the automatic bankruptcy stay. *See* 11 U.S.C. § 362(a)(1). The court rejects Klemp's contention.[7] Section

---

Mechanics' Lien Act, Ill.Rev.Stat. ch. 82, para. 24 (1991).

**6.** Klemp's enforcement action was Case No. 90L8684 in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois.

**7.** In support of this contention, Klemp relies on an Arkansas case, *Gipson v. Tyson Foods, Inc.,*

272 Ark. 485, 615 S.W.2d 363 (1981). The court, however, finds *Gipson* distinguishable because it does not address the adequacy of notice for perfection allegedly provided by filing an action to enforce a mechanics' lien, but rather concerns whether a contractor is a necessary party for purposes of dismissing a foreclosure action.

546(b) of the Bankruptcy Code provides a specific remedy for lien claimants in such a position. 11 U.S.C. § 546(b). Under section 546(b), if the applicable law requires commencement of an action to accomplish perfection of a lien, and the resulting perfection will relate back to a pre-petition date:

> such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b). Under Illinois law, if Klemp had properly perfected its lien by filing suit, that perfection would have related "back to the date on which the inchoate lien arose". *In re Saberman*, 3 B.R. 316, 318 (Bankr.N.D.Ill.1980) (citation omitted); *see also In re Jennison–Wright Corp.*, 111 B.R. 146, 147–48 (Bankr.N.D.Ohio 1990) (bankruptcy stay did not apply to creditor's attempt to perfect mechanics' lien under Illinois law because inchoate lien existed pre-petition, and statutory period for perfection had not yet expired, citing 11 U.S.C. §§ 362(b)(3), 546(b)). The Illinois Mechanics' Lien Act provides that a mechanics' lien arises "as of the date of the contract." Ill.Rev.Stat. ch. 82, para. 1 (1991). Other cases hold that the lien arises "upon the substantial completion of the work contracted for." *In re Saberman*, 3 B.R. at 318. In the present case, it is undisputed that Klemp had manufactured and delivered all of the grating by February 19, 1990. The court determines that Klemp's inchoate lien arose no later than that date. Thus, despite Chasco's bankruptcy, Klemp could have given Chasco § 546(b) notice by June 19, 1990, the time fixed by the Illinois law. *See In re Jennison–Wright Corp.*, 111 B.R. at 147–48 (finding that automatic stay did not apply to lienor's attempt to perfect its mechanics' lien under Illinois law). Based on the foregoing, the court rejects Klemp's claim that its failure to serve Chasco is justified on the basis of the bankruptcy stay.

■ In the alternative, Klemp contends that it provided sufficient § 546(b) notice when it recorded its lien in Will County. It is undisputed, however, that Klemp recorded its lien on April 19, 1990, before the filing of Chasco's bankruptcy on April 25, 1990. Moreover, that recording was defective because Klemp failed to file an affidavit as required under Illinois law. The court thus concludes that the April 19, 1990, recording of Klemp's lien is insufficient to satisfy the notice requirements of § 546(b). *See* 4 *Collier on Bankruptcy*, ¶ 546.03, at 546–12 (Lawrence P. King ed., 15th ed. 1992) (§ 546(b) "protects those who are protected by applicable state law").

■ Klemp also argues that Chasco received § 546(b) notice when a lawsuit was filed to foreclose Antonic's mechanics' lien, which named both Klemp and Chasco as defendants. Even if the court were to determine that the filing of Antonic's suit complied with the requirements of § 546(b), that notice occurred more than four months after Klemp completed its work, and thus is untimely for purposes of perfecting Klemp's lien as against Chasco. *See, e.g., In re Saberman*, 3 B.R. at 318 (holding that if notice "is filed after four months but within two years, the lien will prevail only against the original owner but not third persons"). As one court explained, if a bankruptcy petition is filed two months after a lienor completes it work, and:

> the mechanic's lien claimant waits until three months after the petition had been filed to perfect, i.e., five months after final delivery, the lien claim fails against the trustee's exercise of his strong arm powers under § 544(a). This is true because under Illinois law, perfection after the four month period expires does not relate back as against intervening claimants. Accordingly, § 546(b) does not apply to such a perfection, and the claimant remains unperfected at the date of the petition.

*Knopfler v. Addison Bldg. Material Co. (In re Germansen Decorating, Inc.)*, 149 B.R. 522, 528 (Bankr.N.D.Ill.1993) (citation omitted). Based on the foregoing, the court concludes that under Illinois law, Klemp's mechanics' lien was not perfected as against Chasco.

■ Turning to the validity of Chasco's mechanics' lien, Klemp contends that Chasco has no lien rights because it provided no lienable materials or labor. To support its contention, Klemp relies on section 22 of the Illinois Mechanics' Lien Act, which extends the lien rights of subcontractors to second-tier subcontractors and materialmen. *A.Y. McDonald Mfg. v. State Farm Mutual Automobile Ins. Co.*, 225 Ill.App.3d 851, 167 Ill.Dec. 354, 359, 587 N.E.2d 623, 628 (1992), *appeal denied*, 145 Ill.2d 631, 173 Ill.Dec. 1, 596 N.E.2d 625 (1992). Section 22 provides in part that:

When the contractor shall sub-let his contract or a specific portion thereof to a sub-contractor, the party furnishing material to or performing labor for such sub-contractor shall have a lien therefor; and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors.

Mechanics' Lien Act, Ill.Rev.Stat. ch. 82, para. 22 (1991). Section 21 of the Act, which defines a subcontractor's lien rights, provides that:

every mechanic, worker or other person who shall furnish any materials, apparatus, machinery or fixtures, or furnish or perform services or labor for the contractor, or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work where concrete, cement or like material is used ... shall be known under this act as a sub-contractor, and shall have a lien for the value thereof....

*Id.* para. 21. Thus:

Section 21 of the Act provides for three distinct categories of potential lien claimants, each of whom is designated as a 'sub-contractor': (1) persons furnishing material or machinery, (2) persons furnishing services or labor for the contractor, and (3) suppliers of materials used in concrete form work.

*A.Y. McDonald Mfg.*, 167 Ill.Dec. at 358–59, 587 N.E.2d at 627–28. Although the wording of section 22 is narrower than that contained in section 21, Klemp cites no authority to support its contention that lower tier subcontractors or materialmen are restricted to only those parties who provide labor or materials. In the light of the broader definition of lien rights in section 21 and in the absence of any authority, at the present time the court declines to limit the Illinois Mechanics' Lien Act in that fashion. *See id.* at 359, 587 N.E.2d at 628 ("third-tier subcontractors, ... if they comply with the other provisions of the Act, are afforded lien rights under section 21"). The court thus rejects Klemp's contention that Chasco has no mechanics' lien rights solely because it failed to provide either materials or labor.

After the Chasco bankruptcy was filed, on May 15, 1990, Chasco sent Kehe notification of its claim and intent to file a mechanics' lien. On May 17, 1990, Chasco's mechanics' lien was recorded in Will County. As a result of those actions, the trustee contends that Chasco has properly perfected its mechanics' lien under Illinois law.

■ Klemp contends, however, that Chasco failed to perfect its lien. Klemp first argues that Chasco's notice to Kehe was insufficient to satisfy the requirements of section 24 because Chasco failed to send the notice by certified or registered mail, return receipt requested, limited to the addressee only. In the *Antonic* litigation, Kehe admitted in its answer that Chasco was a lien claimant, and Kehe acknowledged its awareness of Chasco's claim to a mechanics' lien as of March 7, 1991, the date of the hold harmless agreement between Kehe and Klemp. There is no evidence, however, that Kehe actually received Chasco's section 24 notice. If Kehe did receive that notice, Chasco's mailing may be sufficient despite its failure to mail the notice by certified or registered mail, return receipt requested, limited to the addressee only. *A.Y. McDonald Mfg.*, 167 Ill.Dec. at 358, 587 N.E.2d at 627 ("regular mailing would satisfy the statutory requirements of notice where ... actual receipt of notice is acknowledged"). On the present record, however, the court declines to rule that Chasco's mailing was

sufficient to satisfy section 24 as a matter of law. *Cf. Suddarth v. Rosen,* 81 Ill. App.2d 136, 224 N.E.2d 602, 604 (1967) (the Act "makes no exceptions for cases where the owner may have actual notice of the subcontractor's claim from some source other than those included in [s]ection 24").

■ Klemp further contends that Chasco's section 24 notice was insufficient because it did not precede Chasco's recording of its lien claim by ten days, as required under section 28 of the Act.[8] However, in *A.Y. McDonald Manufacturing,* the Illinois Appellate Court rejected that argument as "without merit", determining that "section 28 of the Act addresses the requirements for the recording and enforcement of liens and not notice." 167 Ill.Dec. at 358, 587 N.E.2d at 627. The court thus rejects Klemp's reliance on section 28.

■ Klemp finally contends that Chasco's notice fails to met the requirements of section 24 because Chasco never notified Kehe's lender of its mechanics' lien.[9] The trustee responds that Klemp has no standing to asserted such a defect. The court, however, is required to apply state law to determine the parties' respective property interests. *See, e.g., Tennessee Mach. Co. v. Appalachian Energy Indus. (In re Appalachian Energy Indus.),* 25 B.R. 515, 517 (Bankr.M.D.Tenn.1982) (noting that "[t]he court must refer to state law to determine the relative priorities of the competing liens", citing *Egyptian Supply Co. v. Boyd,* 117 F.2d 608, 611 (6th Cir.1941)). Moreover, in a turnover action:

> the trustee who avoids and then preserves the lien of a creditor cannot acquire greater rights in the property than those to which he has succeeded.

*Id.* (citing 4 *Collier on Bankruptcy,* ¶ 67.-16, at 184 (Lawrence P. King ed., 14th ed. 1978)); *see also In re Pribish,* 25 B.R. 403, 404 (Bankr.D.Me.1982) (holding that "the Bankruptcy Act does not give the trustee

greater rights than those given by state law to a similarly positioned creditor") (citation omitted). The court thus rejects the trustee's claim that Klemp has no standing to assert defects in notice given to others because the court is required to examine the validity and perfection of Chasco's lien in order to analyze the merits of the turnover action.

■ Pursuant to section 24 of the Act, a subcontractor is required to provide notice to an owner, and its lender, if known, within 90 days after completion of the furnishing of labor or materials. The obligation of serving "the lending agency, if known" has been described as:

> the equivalent of service on the lending agency if discoverable by the subcontractor through searching title recording records.

*Hill Behan Lumber Co. v. Irving Federal Savings & Loan Ass'n,* 121 Ill.App.3d 511, 76 Ill.Dec. 931, 934, 459 N.E.2d 1066, 1069 (1984). It is unclear whether Chasco's notice to Kehe was sufficient, *see supra,* and it is undisputed that Chasco failed to notify Kehe's lender. The impact of such failure, however, is unclear under Illinois law. A failure to serve section 24 notice on an owner and its lender has been held to constitute a failure to perfect a mechanics' lien against those parties. *See, e.g., Edward Elec. Co. v. Automation, Inc.,* 164 Ill. App.3d 547, 115 Ill.Dec. 647, 651, 518 N.E.2d 172, 176 (1987). Such failure has also been held to be a prerequisite of an action to foreclose a mechanics' lien:

> Timely notice of a mechanic's lien is a condition precedent to an action to foreclose a lien, without which a sub-contractor cannot recover.

*A & A Acoustics, Inc. v. Valinsky,* 202 Ill.App.3d 516, 147 Ill.Dec. 840, 844, 559 N.E.2d 1180, 1184 (1990) (citing *Vanderlaan v. Berry Constr. Co.,* 119 Ill.App.2d

---

**8.** Klemp relies on the section of paragraph 28 that states that:

> If any money due to the laborers, materialmen or sub-contractors be not paid within 10 days after his notice is served as provided in section[ ] . . . 24, then such person may either

file a claim for lien or file a complaint and enforce such lien. . . .

**9.** The project lender in the present case is American National Bank & Trust Company of Chicago.

142, 255 N.E.2d 615 (1970)). However, other courts have stated that:

> [s]ervice of the section 24 notice has been described as a precedent to the creation of a lien under the Act.

*Hill Behan Lumber Co.,* 76 Ill.Dec. at 934, 459 N.E.2d at 1069 (citing *Suddarth,* 224 N.E.2d at 603). Thus, in analyzing the failure to serve such notice to an owner:

> [t]he courts of [Illinois] have repeatedly ruled that notice to the owner as required by the statute is the 'very substance of the basis on which a mechanic's lien may be predicated.'

*Suddarth,* 224 N.E.2d at 603 (quotation omitted). Thus, Chasco's possible failure to provide Kehe with sufficient notice, and its complete failure to notify Kehe's lender may only impact its perfection as to Kehe or the lender, may prevent perfection as to third parties or may preclude the creation of any mechanics' lien. The court therefore concludes that at the present time, it is unclear whether Chasco has a mechanics' lien, and if so, whether that lien was properly perfected.

■ It is undisputed that Horizon had a mechanics' lien, but there is no evidence concerning the perfection of Horizon's lien. If Horizon's lien has been properly perfected, the turnover action may fail. *See In re Waner Corp.,* 135 B.R. 299, 302 (Bankr. N.D.Ill.1991) (a party with a perfected mechanics' lien is deemed a secured creditor entitled to receive the proceeds of that lien). The trustee also seeks to avoid Klemp's mechanics' lien under § 545 of the Bankruptcy Code, which provides that:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> > (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 545(2). A court, however, may properly refuse preservation of an avoided mechanics' lien if:

> the bankruptcy estate could not thereby acquire superior rights in the property.

Under the code, § 551 operates automatically to preserve an avoided lien. A lien so preserved, however, may be of no practical value to the trustee if senior lienors remain with liens exceeding the value of the property. This is true because the Code does not change the rule established under prior law that preservation of a lien cannot enhance the priority of the avoided lien vis-a-vis competing security interest in the same property.... '[P]reservation is pointless when the lien sought to be preserved is inferior because preservation does not enhance its status.'

*In re Appalachian Energy Indus.,* 25 B.R. at 517 (quotation and footnote omitted). Thus, if under Illinois law, Horizon has a superior lien, or Klemp has priority because Chasco has no lien, the trustee's turnover claim would fail. *See Edward Elec. Co.,* 115 Ill.Dec. at 650, 518 N.E.2d at 175 ("the time at which the lien attaches does not automatically define the status of the parties"). On the record before it, the court thus determines that the validity of Chasco's lien and the priority of the parties' liens is uncertain.

■ The court further concludes that the record is insufficient to grant summary judgment in favor of any party because the contractual relationship, if any, between the parties is unclear. The trustee argues that in the absence of a statute or contractual provision, a subcontractor supplying material or labor to a contractor is deemed only a general creditor of such contractor. *See, e.g., Board of Educ. of School Dist. No. 108 v. Collom,* 77 Ill.App.2d 479, 222 N.E.2d 804, 807 (1966). Thus, in its memorandum in opposition to Klemp's motion for summary judgment, the trustee asserts without authority that:

> Klemp has acknowledged that there was no formal contract between Chasco and Klemp, only purchase orders. There are, therefore, no statutory or contractual provisions that could elevate Klemp from its position as an unsecured creditor of Chasco.

(Pl.'s Mem.Opp'n Summ.J. at 2.) In its brief in support of its motion summary

judgment, however, the trustee argues that:

> While Klemp took the money for value in that it released its lien, Klemp knew it had contracted with Chasco and that Chasco was not getting paid.

(Pl.'s Mem.Supp.Summ.J. at 25.) In its objection to Horizon's motion for summary judgment, the trustee argues again that:

> There was no formal contract between Chasco and Klemp, only purchase orders.

(Pl.'s Mem.Opp'n Summ.J. at 2.) It is also unclear what contractual relationship, if any, existed between Horizon and Chasco. Finally, the record does not reflect the details of any contract between Kehe and the general contractor, MD Con., Inc.

■ Because it is unclear whether any of the parties had an independent legal obligation to pay any of the other parties, arising from contract or the Illinois Mechanics' Lien Act, at the present time the court is unable to determine whether Horizon is entitled to a setoff under the Bankruptcy Code, 11 U.S.C. § 553(a).[10] *See, e.g., Scherer Hardware & Supply, Inc. v. Charles H. Eichelkraut & Son, Inc. (In re Scherer Hardware & Supply, Inc.),* 9 B.R. 125, 129–30 (Bankr.N.D.Ill.1981) ("where a debtor of the bankrupt paid a claim of one of the bankrupt's creditors, a setoff should be allowed if the claim had been acquired as the result of a direct or independent legal obligation", which may arise from two sources: a valid mechanics' lien or a contract); *accord Bel Marin Driwall, Inc. v. Grover (In re Bel Marin Driwall, Inc.),* 470 F.2d 932, 933–34 (9th Cir.1972) (direct payments made by a general contractor, who was a debtor of the bankrupt subcontractor, made directly to a supplier, who was a creditor of the bankrupt, were valid as setoffs).[11]

Based on the foregoing, the court concludes that the motions for summary judgment must be denied because material fact disputes exist concerning the validity of Chasco's lien, the priority of the parties' mechanics' liens, the validity of Horizon's defenses and the contractual relationships, if any, between the parties. As a result of this determination, the court does not address the validity of Horizon's § 542(a) defense based on its alleged lack of control or possession of the funds paid to Klemp and the inconsequential value of Chasco's interest in such funds,[12] Horizon's good faith defense pursuant to § 542(c)[13] or defendants' arguments concerning whether the funds were property of Chasco's estate.[14]

■ Klemp and Horizon also argue that the trustee's turnover action fails because Chasco was, at most, a conduit for the payments between Kehe and Klemp, and thus the court should impose a constructive trust on Kehe's payment to Klemp. In a case applying Illinois mechanics' lien law, the bankruptcy court imposed such a con-

---

**10.** That section provides in pertinent part that:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a).

**11.** Relying on the *Scherer* and *Bel Marin Driwall* cases, the court thus rejects the trustee's arguments concerning the need for mutuality for purposes of permitting a setoff.

**12.** For purposes of a turnover action, § 542(a) of the Bankruptcy Code requires that:

an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell or lease ... shall deliver

to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

**13.** That section provides that:

an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith ... to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

11 U.S.C. § 542(c). As previously noted, it is undisputed that Horizon never received notice of Chasco's involuntary bankruptcy.

**14.** The court also does not reach the myriad of other issues raised by the parties.

structive trust for the benefit of a lienor, despite the fact that the lienor had failed to timely perfect its mechanics' lien as against the debtor. *Tonyan Constr. Co. v. McHenry State Bank (In re Tonyan Constr. Co.)*, 28 B.R. 714, 724 (Bankr. N.D.Ill.1983). Other courts, however, have declined to impose such constructive trusts under Illinois law. *See, e.g., In re T. Brady Mechanical Servs., Inc.*, 133 B.R. 441, 446 (Bankr.N.D.Ill.1991) (declining to follow *Tonyan*). Examining the record, the court concludes that imposition of a constructive trust may be appropriate in the present case. The trustee, however, raises material fact disputes concerning whether Klemp is entitled to rely on such an equitable defense. *See, e.g., In re R. Bastyr & Assocs., Inc.*, 81 B.R. 978, 985 (Bankr. D.Minn.1988) (a party with unclean hands may not rely on equitable remedies). The court thus denies defendants' motions for summary judgment on the basis of a theory of constructive trust.

Klemp also moves for summary judgment on Horizon's cross-claim seeking contribution and indemnity. Klemp argues that the cross-claim fails because Klemp has no liability to Chasco. Based on its determination that material fact disputes exist concerning Klemp's liability, if any, the court denies Klemp's motion for summary judgment on Horizon's cross-claim.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The trustee's motion for summary is denied;

2. Klemp's motion for summary judgment against the trustee is denied;

3. Klemp's motion for summary judgment on Horizon's cross-claim is denied; and

4. Horizon's motion for summary judgment is denied.